**FOUR WINDS PLAZA CORP. and JOSEPH BONANNO, Plaintiffs**
**v.**
**CARIBBEAN FIRE AND ASSOCIATES, INC. and FERGUSON FIRE**
**AND FABRICATION F.K.A. PACIFIC FIRE SAFETY, Jointly and**
**Severally, Defendants**

Civil No. 2005-201

District Court of the Virgin Islands

Division of St. Thomas and St. John

April 18, 2007

899

SHARON SCHOENLEBEN, ESQ., St. John, U.S.V.I., *For Plaintiffs*.

CAROL G. HURST, ESQ., St. Thomas, U.S.V.I., *For Defendants*.

GOMEZ, *Chief Judge*

## MEMORANDUM OPINION

(April 18, 2007)

Before the Court are two motions to dismiss. One is filed by defendant Ferguson Fire and Fabrication ("Ferguson Fire") and the other is filed by defendant Caribbean Fire and Associates, Inc. ("Caribbean Fire"). Both raise the same arguments as to why the Court should dismiss the complaint filed by Four Winds Plaza, Corp. ("Four Winds") and Joseph

Bonanno ("Bonanno") (collectively the "Plaintiffs"). For the reasons discussed below, the Court will grant both motions to dismiss.

## I. Facts

Four Winds is a Virgin Islands Corporation. Bonanno is an officer, employer, and agent of Four Winds, and a resident of the Virgin Islands. Caribbean Fire is a Florida corporation with its principal place of business in Florida. Ferguson Fire is a California corporation with its principal place of business in Virginia and forty-three locations nationwide.[1]

According to the Plaintiffs, the Fire Marshal of the St. Thomas Fire Department has issued fire violations against Four Winds for failure to have an updated sprinkler system. The Fire Marshal required that a fire pump be installed immediately, among other changes.

On May 25, 2004, Caribbean Fire made an offer to Bonanno to sell and deliver the material for a fire pump to St. Thomas, VI.[2] The proposal quoted a price of $9,740, with $4,870 due immediately and $4,870 due upon delivery, for materials. Both parties signed the proposal. On May 26, 2004, Four Winds wrote a check to Caribbean Fire for $4,870. The memo line on the check indicates it is for "Fire pump parts/materials delivered to St. Thomas." [Opp. to Mot., Ex. 3.] The Plaintiffs allege that the loose materials consisted of a fire pump system for Four Winds and that the agreement covered all components, materials, and start up for the system. Caribbean Fire purchased the fire pump system materials from Ferguson Fire.

The Plaintiffs scheduled a meeting with Caribbean Fire on March 9, 2005, at the Plaintiffs' St. Thomas location to start the fire pump. The Plaintiffs brought a crew of five people from New Jersey to St. Thomas for eight days to help make the changes required to satisfy the Fire Marshal's requests. When Caribbean Fire did not appear as agreed, the Plaintiffs attempted to install the fire pump system. The Plaintiffs

---

[1] The Complaint refers to Ferguson Fire as a Florida corporation with its principal place of business in Florida. However, an affidavit attached to Ferguson Fire's motion indicates it is a California corporation with its principal place of business in Virginia.

[2] A copy of this document entitled "Proposal" was attached as Exhibit A to Caribbean Fire's motion to dismiss. It was also attached to the Plaintiff's supplemental memoranda regarding the amount in controversy dated November 27, 2006, and February 6, 2007.

determined the fire pump system was non-conforming, that the parts were not compatible, and that the system was unable to operate.

Four Winds filed a complaint in this Court on December 9, 2005. That same day, summons were issued by the Court to both defendants. An Amended Complaint was filed on January 18, 2006, adding Bonanno as a plaintiff.

Count One alleges breach of contract by Caribbean Fire. Specifically, the Plaintiffs allege that they relied on Caribbean Fire to "recommend, procure, ship to St. Thomas and start up a fire pump system suitable for Plaintiff[s'] needs and the requirements of the Virgin Islands fire marshal." [Compl. at 3.] The Plaintiffs allege Caribbean Fire provided non-conforming goods and failed to appear for start-up.

Count Two alleges breach of contract by Ferguson Fire. The Plaintiffs state that they became a third party beneficiary to the agreement between Caribbean Fire and Ferguson Fire. The Plaintiffs allege Ferguson Fire "failed and refused to provide conforming goods for which the Plaintiff[s] contracted."[3] [Compl. at 4.]

The Plaintiffs seek general, special, and consequential damages for breach of contract.[4] Additionally, Plaintiffs seek attorney's fees and exemplary, or punitive, damages.

Both defendants moved for summary judgment arguing the following:

1. This Court lacks subject matter jurisdiction because the amount in controversy is not met;

2. This Court lacks personal jurisdiction over the defendants;

3. The Amended Complaint was not served upon an authorized representative of either corporation;

4. The summons served were deficient.

On November 17, 2006, this Court held a hearing on the motions. The Court granted Ferguson Fire's motion to dismiss for reasons discussed

---

[3] It seems the Plaintiffs are suing Ferguson Fire for failing to provide conforming goods to the Plaintiffs via Caribbean Fire. The Plaintiffs do not assert they had any contract with Ferguson Fire themselves.

[4] In the summary at the end of the complaint, the Plaintiffs indicate they also seek general, special, and consequential damages due to "Defendants' deceptive trade practices and unconscionable trade practices." [Compl. at 5.] However, the Plaintiffs did not state a claim for unfair trade practices, which requires a showing of an impact on the public interest. *See* V.I. CODE ANN. tit. 12A; § 108.

below. The Court also requested supplemental briefs regarding the amount in controversy. On November 27, 2006, the Plaintiffs filed a two page brief and copies of five checks tendered to Caribbean Fire totaling $37,240. The Plaintiffs also attached the affidavit of Patrick Turzi ("Turzi"), Four Winds' property manager, which avers that the Plaintiffs have incurred consequential losses. Turzi's affidavit does not indicate any dollar amounts that reflect the losses incurred other than the near $40,000 that Plaintiffs paid to Caribbean Fire. Turzi's affidavit does not explain the purpose for which each check was tendered or how each check relates to the contract in dispute.

On January 26, 2007, the Court ordered the parties to "file supplemental briefs discussing how the checks attached to the Plaintiffs' November 27, 2006, Memorandum on Jurisdictional Amount in Controversy are related to the contract at the center of the dispute before this Court ... ." On February 5, 2007, the Plaintiffs filed the same memorandum originally filed on November 27, 2006, accompanied by new exhibits. The exhibits include a photocopy of the May 25, 2004, proposal signed by both parties; a photocopy of another proposal signed by Caribbean Fire on June 1, 2004, but not signed by the Plaintiffs; and photocopies of documents that appear to be invoices.

## II. Personal Jurisdiction

### A. Discussion

"In deciding a motion to dismiss for lack of personal jurisdiction, [the Court] take[s] the allegations of the complaint as true. But once a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996) (internal citations omitted). The plaintiff must establish personal jurisdiction by a preponderance of the evidence. *Manbodh v. Hess Oil V.I. Corp. (In re Kelvin Manbodh Asbestos Litig. Series)*, 47 V.I. 267, 278 (Super. Ct. 2005) (citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).

> Generally, this Court follows a two-step analysis to determine if personal jurisdiction is proper: (1) whether jurisdiction is authorized by the forum's long-arm statute and (2) whether the exercise of personal jurisdiction over the defendant would comport

with due process under the United States Constitution, which requires that the defendants have certain "minimum contacts" with the forum.

*Yusuf v. Adams*, 33 Media L. Rep. 1157 (D.V.I. 2004); *see also Fin. Trust Co. v. Citibank, N.A.*, 268 F. Supp. 2d 561, 566 (D.V.I. 2003) (citing *Int'l Shoe v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

### 1. Long-Arm Statute

The Virgin Islands Long-Arm Statute provides that

> (a)  A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person[]
>
> > (1) transacting any business in this territory;
> > (2) contracting to supply services or things in this territory;
> > (3) causing tortious injury by an act or omission in this territory;
> > (4) causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory;
> > (5) having an interest in, using, or possessing real property in this territory; or
> > (6) contracting to insure any person, property, or risk located within this territory at the time of contracting.
> > (7) causing a woman to conceive a child, or conceiving or giving birth to a child; or
> > (8) abandoning a minor in this Territory.

V.I. CODE ANN. tit. 5. § 4903.[5] The Virgin Islands long-arm statute has been interpreted as applying as widely as the Constitutional requirements permit. *See Urgent v. Tech. Assistance Bureau, Inc.*, 255 F. Supp. 2d 532 (D.V.I. 2003) ("[B]y adopting the Uniform Act, rather than developing its own long-arm statute or adopting the long-arm statute of some other

---

[5]  The Plaintiffs assert section (a)(2) applies to both defendants.

jurisdiction, the Virgin Islands' Legislature likely intended the reach of the Virgin Islands' long-arm statute to be coextensive with the exercise of personal jurisdiction permitted by the *due process clause.*"); *see also Urgent v. Amazon Hospitality, Inc.*, Civil No. 2002-115, 2004 U.S. Dist. LEXIS 12836, at *3 (D.V.I. July 9, 2004) (unpublished).

■ For the long-arm statute to apply, "all that is required by a literal interpretation of the statutory language is that the contract be performed in the Virgin Islands and that the cause of action arise out of the contract." *Godfrey v. Int'l Moving Consultants, Inc.*, Civil No. 79-188, 1980 U.S. Dist. LEXIS 8956, 18 V.I. 60 (D.V.I. Dec. 12, 1980).

### 2. Due Process Requirements

■ Due process requires that a non-resident defendant have minimum contacts with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). Additionally, "subjecting the defendant to the court's jurisdiction [must] comport[] with 'traditional notions of fair play and substantial justice.'" *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002) (quoting *Int'l Shoe*, 326 U.S. at 316).

■ In determining the sufficiency of the defendant's minimum contacts with the forum, "jurisdiction is proper if the defendant has taken 'action ... purposefully directed toward the forum State.'" *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 370 (3d Cir. 2002) (quoting *Asahi Metal Indus. Co., Ltd. v. Super. Court of Cal.*, 480 U.S. 102, 112, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) (plurality opinion of O'Connor, J.)).

> Thus where the defendant "deliberately" has engaged in significant activities within a State, or has created "continuing obligations" between himself and residents of the forum he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (internal citations omitted) (noting that purposeful availment does not require physical contact with the forum).

In determining whether subjecting the defendant to litigation in the forum state is proper, a court may examine the following:

the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)).

In *World-Wide Volkswagen Corp. v. Woodson,* the Supreme Court found that a court in Oklahoma did not have personal jurisdiction over Seaway Volkswagen, Inc. ("Seaway"), a retail car dealer, and World-Wide Volkswagen ("World-Wide"), a regional distributer. Seaway and World-Wide were both incorporated in New York, with their principal places of business in New York. 444 U.S. at 289. A car sold in New York by Seaway caused injury to the plaintiff in Oklahoma. *Id.* The Court found that

> Petitioners carry on no activity whatsoever in Oklahoma. They close no sales and perform no services there. They avail themselves of none of the privileges and benefits of Oklahoma law. They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State. Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market.

*Id.* at 295 (emphasis added). The Court specifically noted that plaintiffs could not base personal jurisdiction on "one, isolated occurrence" of a "fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma." *Id.*

The Supreme Court addressed the issue of personal jurisdiction with regards to manufacturers in *Asahi Metal Industry Co. v. Super. Ct. of Cal.,* 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92. Asahi, a Japanese corporation, manufactured tire valve assemblies in Japan and sold them to Cheng Shin in Taiwan.[6] The Plaintiff alleged that he suffered injury in

---

[6] Because nearly all the claims related to this matter had settled, all that was before the Court was an indemnification claim by Cheng Shin against Asahi.

California caused in part by a tire valve manufactured by Asahi. The *Asahi* Court found that there was no evidence of

> any action by Asahi to purposefully avail itself of the California market. Asahi does not do business in California. It has no office, agents, employees, or property in California. It does not advertise or otherwise solicit business in California. It did not create, control, or employ the distribution system that brought its valves to California. *Cf. Hicks v. Kawasaki Heavy Industries*, 452 F. Supp. 130 (M.D. Pa. 1978). There is no evidence that Asahi designed its product in anticipation of sales in California. *Cf. Rockwell International Corp. v. Costruzioni Aeronautiche Giovanni Agusta*, 553 F. Supp. 328 (E.D. Pa. 1982).

*Id.* at 112-13. The Court found that Asahi was not subject to personal jurisdiction in California. The Court reasoned the "mere awareness" that the items Asahi sold to Cheng Shin would end up in California did not constitute "'minimum contacts' between the defendant and the forum State such that the exercise of jurisdiction [would] not offend traditional notions of fair play and substantial justice." *Id.* at 105, 108, 112-13.

The Territorial Court of the Virgin Islands addressed personal jurisdiction under the Virgin Islands long-arm statute in *Wilkins v. Mason Shoe Manufacturing. Co.*, 17 V.I. 138 (Terr. Ct. 1980). In *Wilkins,* plaintiff William Wilkins ("Wilkins") ordered and received shoes directly from defendant Mason Shoe Manufacturing Co. ("Mason"). One of the shoes allegedly had a nail in it which injured Wilkins. Mason filed a third-party complaint against Osceola Shoe Company ("Osceola"), an Arkansas corporation. Mason "allege[d] Osceola contracted to indemnify Mason against claims based on Mason's sale of Osceola products." *Wilkins,* 17 V.I. at 140. Osceola had no agent or place of business in the Virgin Islands, did not do or solicit business in the Virgin Islands, and did not know of any other sales of its products in the Virgin Islands.

The *Wilkins* Court noted "[t]hree requirements for a contract to support jurisdiction under § 4903(a)(2) have been suggested: 1) that the contract be entered into in the Virgin Islands 2) that the goods be shipped to the Virgin Islands and 3) that the action arise out of the contract." *Id.*

at 142. While it declined to decide whether all three tests are required,[7] the *Wilkins* Court found that the Mason-Osceola contract could not be the basis of personal jurisdiction for Osceola. The *Wilkins* Court reasoned that neither contracting party was located in the Virgin Islands, "nor was the contract delivered to or consideration paid from the Virgin Islands." *Id.* at 143.

Another case involving breach of contract and personal jurisdiction in the Virgin Islands is *The Buccaneer Hotel Corp. v. Reliance Int'l Sales Corp.*, 17 V.I. 249, 255 (Terr. Ct. 1981). The Buccaneer Hotel Corp. ("Buccaneer"), a Virgin Islands corporation, sued Reliance International Sales Corp. ("Reliance"), a Florida corporation, for breach of contract. The Buccaneer had ordered paint via mail order from Reliance in Florida, where the order was processed. *Id.* at 252. "Arrangements for shipping were made by defendant. Shipment of the goods was made directly to the plaintiff, FOB New York, with defendant delivering the paints to a carrier in New York." *Id.* The Court presumed the payment was made by the Buccaneer mailing a check to Florida. *Id.* The paint allegedly washed away after it was applied, giving rise to the complaint. *Id.* Reliance was not authorized to do business in the Virgin Islands and had no offices, agents, sales representatives or employees in the Virgin Islands. *Id.* Reliance moved for summary judgment asserting lack of personal jurisdiction. *Id.* at 251.

The *Buccaneer* Court noted that the shipping terms were irrelevant and that Reliance "was fully aware that the ultimate destination of the goods was the Virgin Islands and knew the paint was being shipped directly to [the] plaintiff without passing through an intervening dealer." *Id.* at 255. The *Buccaneer* Court found that the contract was performed, at least in part, in the Virgin Islands. *Id.* It also found that the

---

[7] Later courts have not treated the three requirements mentioned in *Wilkins* as mandatory. *See, e.g., Godfrey v. Int'l Moving Consultants, Inc.*, 1980 U.S. Dist. LEXIS 8956, 18 V.I. 60 (D.V.I. 1980) ("Although we have restrictively interpreted this subsection in prior dicta, this Court again emphasizes that this section should be so interpreted that its reach is coextensive with the limits of due process. Thus, all that is required by a literal interpretation of the statutory language is that the contract be performed in the Virgin Islands and that the cause of action arise out of the contract." (citation omitted)); *Buccaneer Hotel Corp. v. Reliance Int'l Sales Corp.*, 17 V.I. 249, 255 (Terr. Ct. 1981) ("The only requirement of subsection (a)(2) then, as enunciated in *Godfrey,* is that the contract be performed, at least in part, in the Virgin Islands and that the cause of action arise out of the contract.").

*Buccaneer*'s causes of actions arose from the alleged defectiveness of the paint, thus it fell within subsection (a)(2) of the long-arm statute. *Id.* The *Buccaneer* Court denied the motion for summary judgment, holding it had personal jurisdiction over Reliance. *Id.* at 260.

## B. Analysis

To establish personal jurisdiction, the Plaintiffs must demonstrate the Court has jurisdiction over the defendants both under the long-arm statute and under the requirements of the Constitution.

### 1. Long-Arm Statute

Both defendants are non-residents. Neither of the defendants maintain any offices in the Virgin Islands, nor do they have any employees, distributors or agents in the Virgin Islands. Neither the defendants' principals nor agents have ever been to the Virgin Islands for business purposes.

The proposal from Caribbean Fire and the check from Four Winds to Caribbean Fire both indicate the goods would be delivered in St. Thomas. Thus, Caribbean Fire clearly knew that the materials ordered by the Plaintiffs were for installation in St. Thomas. The contract was to be performed, at least in part, in the Virgin Islands. Furthermore, the cause of action arose directly from the contract. Caribbean Fire, like the defendant in *Reliance,* was fully aware that the ultimate destination for the equipment was the Virgin Islands. Accordingly, Caribbean Fire is subject to personal jurisdiction in this Court under the Virgin Islands long-arm statute.

The Plaintiffs do not specifically explain how the long-arm statute reaches Ferguson Fire. Instead, they state:

> Defendant Ferguson Fire cleverly attempts to disavow any business dealings with the Virgin Islands, but does not deny manufacturing the non-conforming goods supplied to the Plaintiffs in the Virgin Islands. Whereas it is not known what the extent of the business relationship is between the Defendants, it would be premature to casually toss out Ferguson Fire as a manufacturer whose non-conforming goods just happened to end up in the Virgin Islands.

910

[Opp. at 2-3.] Plaintiffs further argue that it is unlikely a business with forty-three locations in the United States would not anticipate its product being used in the Virgin Islands.

Ferguson Fire acknowledged that it sold materials to Caribbean Fire for the Four Winds project. However, the materials supplied left Ferguson Fire's possession in Florida and were delivered to the shipper in Florida.

■ It is unclear what portion of the long-arm statute would apply to Ferguson Fire. Ferguson Fire did not enter into any contract with the Plaintiffs. Ferguson Fire is in the same position as the defendant in *Wilkins*. Like the defendant in that case, Ferguson Fire has no agent or place of business in the Virgin Islands, did not conduct or solicit business in the Virgin Islands, and does not know of any other sales of its products in the Virgin Islands. There is not enough evidence before the Court to find jurisdiction over Ferguson Fire under the Virgin Islands long-arm statute.

The Plaintiffs have failed to meet their burden of proof that this Court has personal jurisdiction over Ferguson Fire. Accordingly, Ferguson Fire's motion to dismiss will be granted for lack of personal jurisdiction.

## 2. Due Process

■ Once the Court determines the long-arm statute applies to a defendant, it must then review whether the defendant had minimum contacts with the forum to satisfy due process requirements. Caribbean Fire voluntarily entered into an agreement with the Plaintiffs to supply goods in the Virgin Islands. Caribbean Fire's agreement amounts to conducting business in the Virgin Islands. Caribbean Fire appears to have been the offeror in this contract. Thus, Caribbean Fire more purposely availed itself of the benefits and privileges of the Virgin Islands than did the defendant in *World-Wide Volkswagen*.

In addition to requiring minimum contacts with the forum, this Court must determine that the exercise of personal jurisdiction does not offend the "traditional notions of fair play and substantial justice." *Asahi Metal Industry Co.*, 480 U.S. at 102. Like the defendant in *Reliance,* Caribbean Fire is located in Florida and thus is not so far from the Virgin Islands that it would be a hardship to defend itself here. Finally, this Court has the same interests the *Buccaneer* Court had in ensuring its residences have a forum for redress against suppliers.

■Caribbean Fire has sufficient minimum contacts with the Virgin Islands that the constitutional personal jurisdiction requirements have been met, and it does not offend the traditional notions of fair play and substantial justice to require Caribbean Fire to defend itself in this Court. Even if this was an isolated contract between Caribbean Fire and the Plaintiffs, the due process requirements have been met for Caribbean Fire. Accordingly, Caribbean Fire's motion to dismiss for lack of personal jurisdiction will be denied.

## II. Amount in Controversy

### A. Discussion

■Title 28, section 1332(a) of the United States Code ("Section 1332(a)") provides this Court with subject matter jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... Citizens of different States." Although Section 1332 excludes "interest and costs" from the amount in controversy, attorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action. *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997) (citing *Mo. State Life Ins. Co. v. Jones*, 290 U.S. 199, 54 S. Ct. 133, 78 L. Ed. 267 (1933)).

■The amount of damages claimed by the plaintiff in good faith generally controls. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S. Ct. 586, 82 L. Ed. 845 (1938). "However, where a Plaintiff's allegations of jurisdictional facts are challenged, the Plaintiff must support them by competent proof." *Moch v. Ashville Hotel Assoc., Ltd.*, No. 91-1209, 1992 U.S. App. LEXIS 27896 (4th Cir. Oct. 22, 1992) (unpublished); *see also Davis v. Shultz*, 453 F.2d 497, 501, n.15 (3d Cir. 1971) ("A party asserting § 1331 jurisdiction has the burden of establishing by competent and preponderate evidence that his claims exceed [the jurisdictional amount]. ... Plaintiffs assume this burden since the question of jurisdictional amount was placed in issue by defendants' motion to dismiss.").

> If the complaint does not contain a demand for an exact monetary amount [ ] the court must make an independent appraisal of the claim and after a generous reading of the complaint, arrive at the reasonable value of the rights being litigated.

*Boehm v. Chase Manhattan Bank*, Civil No. 1999-209, 2002 U.S. Dist. LEXIS 25238 (D.V.I. Dec. 20, 2002) (citations omitted).

■ "Claims for punitive damages may be aggregated with claims for compensatory damages unless the former are patently frivolous and without foundation. Punitive damage claims are per se patently frivolous and without foundation if they are unavailable as a matter of state substantive law." *Golden v. Golden*, 382 F.3d 348, 355 (3d Cir. 2004) (internal quotations omitted). Under Virgin Islands law, a claim for punitive damages is not supported by a routine breach of contract claim. *Hall v. Delta Air Lines, Inc.*, 340 F. Supp. 2d 596, 600, 46 V.I. 324 (D.V.I. 2004); *see also White v. S & E Bakery*, 26 V.I. 87, 91 (V.I. Terr. Ct. 1991) ("[P]unitive damages are not awarded in contract cases unless the conduct constituting the breach is also a tort.").

■ For a court to dismiss a claim for failure to meet the amount in controversy, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount ... ." *St. Paul Mercury Indem. Co.*, 303 U.S. at 289. "[T]he amount in controversy should not be 'measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated.'" *Suber v. Chrysler Corp.*, 104 F.3d 578, 586 (3d Cir. 1997) (quoting *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993)). "[T]he record must clearly establish that after jurisdiction was challenged the plaintiff had an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing, in support of his jurisdictional contention." *Id.* at 583-84.

In *Moch v. Ashville Hotel Assoc, Ltd.*, the plaintiff was injured and incurred medical expenses of less than $1,400. 1992 U.S. App. LEXIS 27896, at *5. When the defendant challenged the jurisdictional amount, which was then $50,000, the plaintiff offered no additional proof of his damages. *Id.* at *5. "The only proof [Mr. Moch] offer[ed] in support of his claim that he [wa]s entitled to more than $50,000 in damages is his statement that he [wa]s embarrassed by the scar and numbness he experiences from the injury." *Id.* The court found that even if he recovered $50,000 from a jury, the award would be excessive because $48,000 would be too much for the embarrassment and the court could order a remittitur. *Id.* at *6. Thus, the court found that it was a legal certainty that the plaintiffs could not recover in excess of $50,000. *Id.* at *9. The lack of any proof by the plaintiffs was important to the *Moch* Court.

This Court discussed the amount of controversy issue in *Sunnyrock Bldg. & Design Co. v. Gentile*, Civil No. 2000-34, 2000 U.S. Dist. LEXIS 10341 (D.V.I. July 18, 2000) (unpublished). In *Sunnyrock,* the plaintiff Sunnyrock Building and Design Co. ("Sunnyrock") entered into a construction contract with James and Denise Gentile (the "Gentiles"). After a disagreement arose, Sunnyrock stopped construction, and issued a "final requisition" for payment in the amount of $31,704.42. The $31,704.42 invoice included $14,481.25 for outstanding work by subcontractor David Whisler ("Whisler"). Sunnyrock also noted that an extra $50,030 in retainage was outstanding. Sunnyrock filed a construction lien against the Gentiles "in the amount of $81,724.42, or ten dollars less than the sum of the $31,704.42 invoice plus the $50,030.00 retainage." *Id.* at *4. Sunnyrock later sued for breach of contract, promissory estoppel, quantum meruit, foreclosure of the construction lien, and breach of the duties of good faith and fair dealing.

An affidavit by Whisler indicated Sunnyrock improperly billed the Gentiles for the $14,481.25 as the work was not completed. Sunnyrock did not provide any evidence of its own to controvert this affidavit. James Gentile also averred that Sunnyrock never submitted an invoice for $50,030. The court found that "[t]he conditions precedent to billing and payment of that amount ha[d] not occurred, and Sunnyrock ha[d] not established that this retainage was due when it filed the complaint. Indeed, $64,511.25 of the plaintiff's construction lien and claim was not due at that time." *Id.* at *5.

The court found that "[w]hether [it] deduct[ed] $14,481.25, $50,030.00, or the sum of $64,511.25 from Sunnyrock's complaint and construction lien, it [wa]s clear that the plaintiff ha[d] failed to controvert the specific facts pled by the defendants and establish diversity jurisdiction for its basic breach of contract claim." *Id.* at *6. The court noted that, while Sunnyrock contended that the amount in controversy was in dispute, the court's task was to weigh the evidence under Federal Rule of Civil Procedure 12(b)(1), not simply determine whether there was a factual dispute. *Id.* The court explained that "Sunnyrock's reliance on the complaint and conclusory "final requisition" renders the former task quite simple" and granted the motion to dismiss. *Id.* at *7-8.

## B. Analysis

The Plaintiffs seek general, special, and consequential damages for the breach of contract and for the deceptive trade practices. Plaintiffs also seek attorney's fees, costs, and disbursements in obtaining coverage and prosecuting this action, with interest.

General, special, and consequential damages all qualify as compensatory damages. *See* BLACK'S LAW DICTIONARY 352 (5th ed. 1979) (defining general, special, and consequential damages as each being those expenses that are a result of the injury, and further defining "compensatory damages" as those that will "compensate the injured party for the injury sustained").

■ The Plaintiffs failed to provide any evidence in support of their proof of damages aside from photocopies of various checks they remitted to Caribbean Fire. Despite ample opportunity, the Plaintiffs have not explained how those checks are related to the contract at the center of this action. Even assuming that all of the checks attached to the Plaintiffs' memorandum on the amount in controversy are directly related to the contract in dispute, the Plaintiffs have only established $37,240 in damages, which falls short of $75,000. The Plaintiffs claim for punitive damages cannot be supported by this routine breach of contract claim that does not involve any tortious conduct. *See Hall*, 340 F. Supp. 2d at 600; *White*, 26 V.I. at 91.

The Plaintiffs' claim for damages includes added personnel expenses, loss associated with the denial of Four Winds' business license by the Fire Department, and lost rental income. However, the Plaintiffs have not provided the Court with any estimates of what these costs might be. Like the plaintiffs in *Sunnyrock* and *Moch,* the Plaintiffs here have failed to provide any estimates or evidence of such estimates. "[T]he Court cannot rely on conjecture in its determination of the jurisdictional amount at issue ... ." *Bachman Co. v. MacDonald,* 173 F. Supp. 2d 318, 328 (E.D. Pa. 2001).

## V. Conclusion

This Court lacks personal jurisdiction over Ferguson Fire. This Court also lacks subject matter jurisdiction over Four Winds' claims against Caribbean Fire because the amount in controversy has not been met.

Accordingly, the motions to dismiss will both be granted and the complaint will be dismissed. An appropriate order follows.