

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-21-2009

# Metcalfe v. Renaissance Marine I

Precedential or Non-Precedential: Precedential

Docket No. 08-1720

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Metcalfe v. Renaissance Marine I" (2009). *2009 Decisions.* Paper 1270.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1270

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

―――――

No. 08-1720

―――――

RICHARD METCALFE;
CYNTHIA METCALFE,

Appellants

v.

RENAISSANCE MARINE, INC.

―――――

On Appeal from the District Court of the Virgin Islands
Division of St. Thomas
(D.C. No. 07-cv-00131)
District Judge:  Honorable Curtis V. Gomez

―――――

Argued December 10, 2008
Before:  FISHER, JORDAN
and STAPLETON, *Circuit Judges*.

(Filed: May 21, 2009)

Ashlee M. Gray (Argued)
Gregory H. Hodges
Dudley, Topper & Feuerzeig
1000 Frederiksberg Gade
St. Thomas, VI  00802
    *Attorneys for Appellants*

Alan R. Feuerstein (Argued)
Feuerstein & Smith
17 St. Louis Place
Buffalo, NY  14202-1502
    *Attorney for Appellee*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

This appeal involves a dispute as to whether the District Court of the Virgin Islands erred in dismissing the plaintiffs' complaint for lack of personal jurisdiction after determining that the Virgin Islands Long-Arm Statute did not reach the defendant and that constitutional due process was not satisfied. Because the District Court failed to construe disputed facts in favor of the plaintiffs, as it was required to do at the motion to dismiss stage, we conclude that it erred in ruling that the plaintiffs were unable to demonstrate a prima facie case in support of the exercise of personal jurisdiction over the defendant. Therefore, we will reverse and remand to the District Court with instructions that

it allow the plaintiffs an opportunity to conduct jurisdictional discovery.

**I.**

**A. Factual History**

Richard and Cynthia Metcalfe are residents of the United States Virgin Islands. In April 2006, the Metcalfes purchased a Renaissance Prowler 246 powerboat, two engines, and other equipment from Renaissance Marine, Inc. (Renaissance) for approximately $85,000. Renaissance is a corporation organized under the laws of Florida with its principal place of business in Miami, Florida.

Beyond the aforementioned facts, the parties offer materially different versions of the events that led to this current lawsuit. The Metcalfes allege that they became familiar with Renaissance boats by renting them from See & Ski, a powerboat rental company located on St. Thomas. They aver that See & Ski has at least four boats in its rental fleet that it purchased from Renaissance within a period of six years. Additionally, they contend that Renaissance advertises on its website that its boats can be rented from See & Ski in the Virgin Islands. According to the Metcalfes, Renaissance has sold at least seven boats to Virgin Islands residents in the past few years. The Metcalfes state that while they were in St. John, they negotiated the sale of the Prowler 246 with Renaissance by telephone, fax, and the internet. They assert that Renaissance was fully aware that the ultimate destination of the Prowler 246 was the Virgin

3

Islands and that Renaissance shrink-wrapped the boat for shipping and took it to the shipper for the Metcalfes.

In contrast, Renaissance contends that the Metcalfes traveled to Miami where they purchased the Prowler 246. Renaissance also states that all of its sales, including this one, are governed by a ten-year limited warranty and a purchase agreement with additional terms and conditions. Renaissance specifically notes that the warranty contains a forum selection clause which provides that the interpretation and enforcement of the warranty is governed by Florida law and that any action shall be brought in Miami-Dade County.[1]

Concerning the warranty, the Metcalfes assert that Renaissance contacted them in the Virgin Islands one month after they received delivery of the Prowler 246 in an effort to have them sign the warranty, which they refused to do. The Metcalfes state that the warranty was never presented to them

---

[1]The pertinent part of the warranty states:

"Venue and Jurisdiction. The laws of the State of Florida shall govern the interpretation and enforcement of this Hull Warranty. Any action under this Hull Warranty shall be brought in the courts of the state of Florida, situated in Miami-Dade County, Florida. Purchaser and Renaissance Marine, Inc. agree and admit that each is engaged in and conducts business in the State of Florida and therefore each is subject to jurisdiction in Florida."

until after the sale was complete and that one reason why they did not sign it is because they did not agree with the forum selection clause.

On December 25, 2006, the Metcalfes discovered that the Prowler 246 had partially sunk. They had a marine surveyor assess the defects in the Prowler 246 and the likely cause of the sinking. The Metcalfes shared the findings in the surveyor's report with Renaissance, and although the company initially proposed to cure the problems with the Prowler 246 in the Virgin Islands and subsequently offered to transport it to Florida to make the necessary repairs, no remedy was ultimately provided.

## B. Procedural History

On October 15, 2007, the Metcalfes brought suit in the District Court of the Virgin Islands alleging breach of express warranty, breach of implied warranties, breach of the covenant of good faith and fair dealing, misrepresentation, and liability under the Magnuson-Moss Warranty–Federal Trade Commission Improvement Act. On November 29, 2007, Renaissance moved to dismiss the matter for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). On December 13, 2007, the parties stipulated to an extension of time for the Metcalfes to oppose the motion to dismiss, giving them until December 21, 2007, to do so. The parties orally stipulated to an additional extension of time on December 20, 2007, allowing the Metcalfes until January 9, 2008, to file an opposition to the motion to dismiss, but counsel for the Metcalfes neglected to file this stipulation with the

District Court.  Consequently, on January 2, 2008, the District Court issued an order dismissing the matter because of the Metcalfes' failure to meet their burden of establishing the District Court's jurisdiction over Renaissance.

Notwithstanding the District Court's order, on January 9, 2008, the Metcalfes filed an opposition to Renaissance's motion to dismiss and also filed a motion for reconsideration arguing that the order should be vacated to correct clear error and prevent manifest injustice.  Renaissance subsequently filed a reply to the opposition to the motion to dismiss and an opposition to the motion to reconsider.  Renaissance also filed a motion to supplement its original motion to dismiss.

In an effort to prevent further overlapping and conflicting pleadings, the District Court held a status conference on February 6, 2008.  The District Court determined that it would consider the Metcalfes' opposition to Renaissance's motion to dismiss because, despite the oversight by the Metcalfes' counsel, ignoring their opposition would prejudice them.  Thus, the District Court decided to reopen the case to determine whether dismissal of the complaint was appropriate; however, the District Court concluded that it would not consider any filings submitted after the status conference and instead would rule directly on the motion to dismiss, giving consideration to the Metcalfes' opposition to the motion.[2]

---

[2]The Metcalfes assert that the District Court did not communicate this decision to them at the status conference.

Following the status conference, the Metcalfes and Renaissance nonetheless both continued to submit filings to the District Court. Specifically, the Metcalfes filed a reply to Renaissance's opposition to the motion for reconsideration and a document entitled a "Notice of Filing of Supplemental Declaration of Richard Metcalfe with Previously Omitted Exhibits." Renaissance filed a motion to amend its opposition to the motion for reconsideration.

On February 15, 2008, the District Court ruled on Renaissance's motion to dismiss, and indicated in a footnote in its memorandum opinion that it did not consider these additional filings. The District Court determined that the Metcalfes failed to meet their burden of showing that jurisdiction over Renaissance was appropriate under the Virgin Islands Long-Arm Statute and, even if the statute was somehow satisfied, failed to show that the exercise of jurisdiction over Renaissance would comport with constitutional due process. Because the District Court concluded that it did not have personal jurisdiction over Renaissance, it did not reach the other grounds for dismissal that Renaissance asserted in its motion. The Metcalfes filed a timely notice of appeal.

## II.

As an initial matter, Renaissance argues that the District Court lacks subject matter jurisdiction over this entire action because the Metcalfes' complaint does not meet the threshold amount of $75,000 required in a diversity action under 28

7

U.S.C. § 1332.[3]  Renaissance argues that an appraisal of the Metcalfes' damages reveals that their losses only amount to $16,533.39.  We reject this argument because, in addition to the itemized "out of pocket expenditures" which the $16,000 figure represents, the Metcalfes also seek rescission of the contract for the sale of the Prowler 246, and thus make a claim for more than $85,000 in damages.  Accordingly, the District Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the Metcalfes are domiciled in the Virgin Islands, Renaissance is domiciled in Florida, and the Metcalfes' complaint sets forth a good faith claim in excess of $75,000. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938).  There is also an independent basis for subject matter jurisdiction over the Metcalfes' Magnuson-Moss Warranty Act claim pursuant to 15 U.S.C. § 2310(d)(1)(B).

We have jurisdiction over this appeal from the District Court's final order pursuant to 28 U.S.C. § 1291.  "Whether personal jurisdiction may be exercised over an out-of-state defendant is a question of law," *Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 554 (3d Cir. 1993), and therefore we will exercise plenary review over the District Court's determination that it lacked personal jurisdiction in the present case.  *See Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).

## III.

---

[3]Under 48 U.S.C. § 1612(a), the District Court of the Virgin Islands has diversity jurisdiction to the full extent as provided for in 28 U.S.C. § 1332.

The central issue in this appeal is whether the District Court erred when it determined that it could not exercise personal jurisdiction over Renaissance, a nonresident defendant. However, Renaissance argues that we need not reach this issue because the Metcalfes are contractually prohibited from bringing their claims in any jurisdiction other than Florida as a result of a valid, binding forum selection clause contained in its warranty. The problem with this argument is that Renaissance failed to establish that the Metcalfes ever agreed to this warranty. The Metcalfes claim that Renaissance contacted them one month after they received delivery of the Prowler 246 and, at that point in time, solicited their signature in order to execute the warranty. Although Renaissance attached a copy of the warranty to an affidavit, it does not bear the signature of either Richard or Cynthia Metcalfe and Renaissance makes no attempt to explain why a signature is not present. Consequently, it appears that the warranty was not incorporated into the sales contract but was a separate agreement to which the Metcalfes did not assent.

We recognize that some tension exists between the Metcalfes' assertion that they were not bound by the warranty because they never signed it and allegations in their complaint with respect to "Renaissance's product support, service and warranty programs," but, in light of the current posture of this case, it is best for the District Court to resolve the factual dispute as to whether the warranty applied to the sale between Renaissance and the Metcalfes. The District Court did not address this issue at the time it granted the motion to dismiss, and therefore we will not reach it either. Instead, we will focus our analysis on the question of whether the District Court may exercise personal jurisdiction over Renaissance.

9

**A. Assessing a Motion to Dismiss
for Lack of Personal Jurisdiction**

A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state. *See*, *e.g.*, *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984). Establishing personal jurisdiction in the Virgin Islands involves a two-part analysis.[4] First, there must be a statutory basis for exercising jurisdiction over the nonresident defendant in accordance with the Virgin Islands Long-Arm Statute, V.I. Code Ann. tit. 5, § 4903, and second, the nonresident defendant must have minimum contacts with the Virgin Islands sufficient to satisfy constitutional due process.[5] *See In re Kelvin Manbodh Asbestos Litig. Series*, 47 V.I. 267, 279 (Super. Ct. 2005)

---

[4]As our dissenting colleague points out, there is caselaw which states that the reach of the Virgin Islands Long-Arm Statute is coextensive with the maximum parameters of the Due Process Clause and therefore concludes that only constitutional due process considerations are relevant to determine whether personal jurisdiction can be exercised over a nonresident defendant, *see Urgent v. Tech. Assistance Bureau, Inc.*, 255 F. Supp. 2d 532, 535-36 (D.V.I. 2003), but we think it best to consider the statutory bases for exercising long-arm jurisdiction in addition to the constitutional requirements in order to ensure that we are honoring "the law of the forum state."

[5]Section 3 of the Revised Organic Act of 1954, 48 U.S.C. § 1561, makes the Due Process Clause applicable to the Virgin Islands.

("[T]he Court's *in personam* jurisdiction is limited first by the terms of the [long-arm] statute and then by the Due Process Clause of the Fourteenth Amendment to the Constitution."); *Godfrey v. Int'l Moving Consultants, Inc.*, 18 V.I. 60, 66 (D.V.I. 1980) ("The proper method of testing jurisdiction over a nonresident defendant is to first determine whether the long-arm statute authorizes the Court to exercise its adjudicatory powers, and then secondly, to decide if such an exercise is constitutionally permissible."). The District Court determined that the Metcalfes failed to meet their burden of showing that the exercise of jurisdiction over Renaissance was permissible because they relied on their own "self-serving declaration" which was "simply insufficient." However, the District Court reached this determination without applying the proper standard for evaluating a motion to dismiss for lack of personal jurisdiction.

"[T]he burden of demonstrating the facts that establish personal jurisdiction," falls on the plaintiff, *Pinker*, 292 F.3d at 368, and "once a defendant has raised a jurisdictional defense," the plaintiff must "prov[e] by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). If the district court does not hold an evidentiary hearing, "the plaintiff[s] need only establish a prima facie case of personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (alterations in original) (internal quotation marks omitted). Moreover, "[i]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318

11

F.3d 446, 457 (3d Cir. 2003); *accord O'Connor*, 496 F.3d at 316 (explaining that prior to an evidentiary hearing or trial, "the plaintiff[s] [are] entitled to have [their] allegations taken as true and all factual disputes drawn in [their] favor" (alterations in original) (internal quotation marks omitted)). "Of course, by accepting a plaintiff's facts as true when a motion to dismiss is originally made, a court is not precluded from revisiting the issue if it appears that the facts alleged to support jurisdiction are in dispute." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

Here, the Metcalfes did not merely rest on their pleadings but rather submitted a sworn affidavit and other documentary evidence in support of a finding of personal jurisdiction over Renaissance. Nonetheless, without holding an evidentiary hearing, the District Court discredited this evidence when it stated:

> "[S]ave for the contract for the [Prowler 246], the Metcalfes have not come forward with any competent evidence that Renaissance deliberately targeted Virgin Islands residents. The Court is left with the fact that the Metcalfes contacted a Florida corporation regarding the purchase of a product from that corporation in Florida."

The District Court also construed disputed facts against the Metcalfes, which is reflected in the following statement:

> "To the extent the Metcalfes again rely on the declaration attached to their opposition, the

12

Metcalfes still fail to meet their burden. That declaration contains several statements that purport to show that Renaissance 'reached out' to the Virgin Islands. . . . Here, again, the Metcalfes' exclusive reliance on bald assertions set forth in a declaration is misplaced for the purpose of establishing personal jurisdiction."

These excerpts demonstrate that the District Court did not apply the proper standard for evaluating the motion to dismiss for lack of personal jurisdiction. Although the Metcalfes needed to make a threshold showing in support of jurisdiction, they were entitled to have their allegations viewed as true and have disputed facts construed in their favor. *See O'Connor*, 496 F.3d at 316; *Toys "R" Us*, 318 F.3d at 457. Instead, the District Court credited Renaissance's factual allegations and construed disputed facts in its favor, as if Renaissance were the nonmoving party. In doing so, the District Court committed error by failing to apply the correct standard for evaluating personal jurisdiction at this stage of the litigation.

Our task, therefore, is to determine whether the Metcalfes have established a prima facie case that the exercise of jurisdiction over Renaissance is consistent with the Virgin Islands Long-Arm Statute and constitutional due process, assuming the sworn allegations that appear in the Metcalfes' affidavit and the other documentary evidence on record are true and construing factual disputes in their favor.

13

## B. Interpreting the Virgin Islands Long-Arm Statute

Turning to the statutory bases for exercising jurisdiction over a nonresident defendant, the Metcalfes argue that subsection (a)(1) and subsection (a)(2) of the Virgin Islands Long-Arm Statute apply to the facts of this case. The relevant portions of the statute state:

> "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's
>
> > (1) transacting any business in this territory;
> >
> > (2) contracting to supply services or things in this territory[.]"

V.I. Code Ann. tit. 5, § 4903(a).

"Under subsection (a)(1), the term 'transacting any business' can be satisfied by only a single act which in fact amounts to the transaction of business within the state or territory." *Fin. Trust Co. v. Citigroup*, 268 F. Supp. 2d 561, 567 (D.V.I. 2003) (internal quotation marks omitted) (finding it sufficient under subsection (a)(1) that the defendant entered into a contract with a Virgin Islands resident and solicited the plaintiffs while they were in the Virgin Islands). "[T]ransacting business is a term that connotes activity that is less than doing business, but more than an inconsequential act." *In re Kelvin Manbodh Asbestos Litig. Series*, 47 V.I. at 283; *see also*

14

*Paradise Motors, Inc. v. Toyota de Puerto Rico, Corp.*, 314 F. Supp. 2d 495, 498 & n.4 (D.V.I. 2004) (finding participation in some business activity in the Virgin Islands coupled with the receipt of substantial revenue from the activity sufficed to establish the application of subsection (a)(1) of the long-arm statute).

The District Court concluded that subsection (a)(1) could not be applied to reach Renaissance, finding it significant that the Metcalfes did "not claim that they signed the

contract in the Virgin Islands, that Renaissance delivered the [Prowler 246] to them in the Virgin Islands, or that Renaissance performed any part of the contract in the Virgin Islands." However, the District Court's exclusive focus on the contract was misplaced because the proper focus of the subsection (a)(1) analysis should be on whether Renaissance engaged in any act that might constitute "transacting business" in the Virgin Islands.

The evidence submitted by the Metcalfes, if true, supports the application of subsection (a)(1). In particular, the Metcalfes assert that Renaissance exchanged phone calls, faxes, and emails with the Metcalfes while they were in the Virgin Islands during the process of negotiating the sale of the Prowler 246. In a footnote, the District Court dismissed the evidence regarding these negotiations as "too sparse . . . to make any determination about their substantiality." However, under Virgin Islands law, "a single act which in fact amounts to the transaction of business" satisfies subsection (a)(1). *Fin. Trust Co.*, 268 F. Supp. 2d at 567 (internal quotation marks omitted).

15

Because one single act can constitute "transacting business," surely repeated, reciprocal communications between a buyer in the Virgin Islands and a seller located elsewhere which culminate in an agreement for the sale of an item at a cost of nearly $85,000 also satisfies the standard under subsection (a)(1). Therefore, accepting the Metcalfes' evidence as true and construing disputed facts in their favor, we conclude that they have met their burden, at this stage, of establishing that subsection (a)(1) applies by showing that Renaissance transacted business in the Virgin Islands and that their claims arise out of this transaction.

In the alternative, subsection (a)(2) may provide an even stronger statutory basis for exercising long-arm jurisdiction over Renaissance. The only requirement of subsection (a)(2) "is that the contract be performed, at least in part, in the Virgin Islands and that the cause of action arise out of the contract." *Buccaneer Hotel Corp. v. Reliance Int'l Sales Corp.*, 17 V.I. 249, 255 (Terr. Ct. 1981). When a defendant is aware that the Virgin Islands is the ultimate destination of the goods it is supplying, the contract is said to be performed (at least in part) in the Virgin Islands. *See id.* at 256 (concluding, in an action brought by a resident buyer against a nonresident seller, that subsection (a)(2) reached the nonresident defendant because "the defendant made the arrangements for shipment and knew the goods were being shipped directly to [the] plaintiff in the Virgin Islands. There is no question that the contract was performed, at least in part, in the Virgin Islands."); *Four Winds Plaza Corp. v. Caribbean Fire & Assocs.*, 48 V.I. 899, 910 (D.V.I. 2007) (finding the defendant "was fully aware that the ultimate destination for the equipment was the Virgin Islands"

16

because of indications in a sales proposal and payment check that the goods would be delivered in St. Thomas). Focusing on the precise language of the statute, the *Buccaneer* court emphasized that "the subsection . . . bases jurisdiction on a contract 'to supply' services or things," noting that "the verb 'supply,' rather than 'deliver' or 'ship,' was selected as a basis for jurisdiction by the drafters of the statute." 17 V.I. at 256.

In an affidavit, Richard Metcalfe stated: "When purchasing the [Prowler 246], I informed Renaissance that it would be kept in the Virgin Islands, so Renaissance was fully aware that the ultimate destination of the [Prowler 246] was the Virgin Islands. Renaissance even wrapped the [Prowler 246] for shipping and took it to the shipper." However, the District Court determined that this declaration was not competent evidence and therefore could not be relied on to find that subsection (a)(2) applied. The District Court stated:

> "Renaissance asserts in its reply that the Metcalfes, not Renaissance, arranged for shipping. That assertion appears to conflict with the Metcalfes' version of events. Thus, there appears to be a factual dispute over whether Renaissance in fact knew that the Virgin Islands was the ultimate destination for the [Prowler 246]. Where there is a factual dispute, the burden is on the plaintiff to prove that jurisdiction is permissible. . . . Here, the Metcalfes have adduced no competent evidence to refute Renaissance's claim that the Metcalfes handled shipping."

17

Contrary to what the District Court stated, it was not the Metcalfes' burden to resolve factual disputes at this phase of the litigation. As previously discussed, although the Metcalfes had the burden of making a prima facie showing that jurisdiction was proper, they were entitled to have their allegations viewed as true and have disputed facts construed in their favor.[6]

Accepting the Metcalfes' evidence as true and construing disputed facts in their favor, we conclude that Renaissance was aware that the ultimate destination of the Prowler 246 was the Virgin Islands and therefore the contract was performed, at least in part, in the Virgin Islands. *See Buccaneer*, 17 V.I. at 255-56. Because this action arises out of the contract for the sale of the Prowler 246, the Metcalfes have met their burden at this stage of the litigation of showing that subsection (a)(2) applies. Thus, when we consider the evidence set forth by the Metcalfes under the proper standard for evaluating a motion to dismiss for lack

[6]Moreover, there was additional evidence that the District Court did not consider because the Metcalfes submitted it after the February 6, 2008 status conference. Although we do not rely on this evidence in reaching our conclusion, we note that it further evinces Renaissance's knowledge that the Prowler 246 was destined for the Virgin Islands and thereby supports finding the application of subsection (a)(2). For example, the Metcalfes state that Renaissance did not withhold Florida sales tax on the sale of the Prowler 246 based on its understanding that the boat was purchased for export to the Virgin Islands, and that both an invoice and a "Manufacturer's Statement of Origin" from Renaissance listed the Metcalfes' address as St. John, Virgin Islands.

of personal jurisdiction, we conclude that both subsection (a)(1) and subsection (a)(2) provide a statutory basis for exercising long-arm jurisdiction over Renaissance.[7]

## C.  Satisfying Constitutional Due Process Through Minimum Contacts

In addition to demonstrating the applicability of the Virgin Islands Long-Arm Statute, the Metcalfes also must show that the exercise of personal jurisdiction over Renaissance satisfies constitutional due process.  The due process inquiry involves an assessment as to "whether 'the quality and nature of the *defendant's* activity is such that it is reasonable and fair to require [that it] conduct [its] defense in that state.'"  *Time Share Vacation Club*, 735 F.2d at 63 (alterations in original) (quoting *Kulko v. Super. Court of Cal.*, 436 U.S. 84, 92 (1978)).  As a threshold matter, the defendant must have taken "action . . . purposefully directed toward the forum State."  *Pinker*, 292 F.3d

---

[7]We recognize that in order to satisfy constitutional due process, a contract, "without more, is insufficient to establish minimum contacts," as are "informational communications" in furtherance of a contract.  *See Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993).  For this reason, we consider additional evidence of Renaissance's contacts with the Virgin Islands in order to evaluate whether the exercise of personal jurisdiction over Renaissance comports with due process.  At this point in the analysis, our dissenting colleague's views diverge from our own with respect to whether the Metcalfes have alleged more than just the existence of a contract alone to demonstrate the necessary minimum contacts.

at 370 (quoting *Asahi Metal Indus. Co. v. Super. Court of Cal.*, 480 U.S. 102, 112 (1987) (plurality opinion)). Accordingly, the due process analysis focuses on the nonresident defendant's "minimum contacts" with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction. A court may exercise general jurisdiction over a defendant where he or she has "continuous and systematic" contacts with the forum, whether or not those contacts are related to the plaintiff's cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000). Specific jurisdiction exists if the defendant has "'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp.*, 471 U.S. at 472 (internal citation omitted). "If the defendant 'maintain[s] continuous and substantial forum affiliations,' then general jurisdiction exists. If the defendant's contacts fall short of that standard, then at least one contact must give rise or relate to the plaintiff's claim." *O'Connor*, 496 F.3d at 321 (internal citation omitted). Because general and specific jurisdiction are "analytically distinct categories," *id.*, we consider the facts relevant to each category separately.

The Metcalfes argue that the District Court may exercise either general or specific jurisdiction over Renaissance. The District Court reasoned that "[t]he facts of this case do not support a general jurisdiction analysis" because "the Metcalfes'

20

claims are directly related to Renaissance's sale of a boat to Virgin Islands' residents." While it is true the Metcalfes' claims are directly related to Renaissance's sale of the Prowler 246 to them, general jurisdiction can be exercised regardless of whether the contacts relate to the plaintiff's cause of action and, consequently, persuasive evidence that the Metcalfes introduced of the general business contacts that Renaissance has with the Virgin Islands was overlooked. *See Helicopteros*, 466 U.S. at 416; *BP Chems. Ltd.*, 229 F.3d at 259.

Specifically, the Metcalfes alleged that Renaissance sold at least four powerboats to a Virgin Islands rental company and advertised on its website that its boats could be rented from this local company, and also alleged that Renaissance sold at least seven powerboats to Virgin Islands residents in recent years. Moreover, the Metcalfes argued in the District Court that "Renaissance has created continuing obligations by offering a 10 year warranty program," which is consistent with Renaissance's own assertion that "all purchase agreements entered into by and between Renaissance and its customers are subject to a Ten Year Limited Hull Warranty." As a result, Renaissance has obligated itself to its customers in the Virgin Islands for many years to come. Renaissance's sales and advertising demonstrate a pattern of contacts with the Virgin Islands and, when coupled with the ten-year warranty that Renaissance purports to offer with every sale, tend to suggest ongoing business relationships between Renaissance and Virgin Islands residents. Thus, when these contacts are viewed

21

cumulatively, as opposed to in isolation, they tend to support the exercise of general personal jurisdiction over Renaissance.[8]

Although this evidence, if true, does not signal that Renaissance has an overwhelming presence in the Virgin Islands, it does suggest that Renaissance has maintained the type of "continuous and systematic" contacts needed to find general jurisdiction. *See Hendrickson v. Reg O Co.*, 657 F.2d 9, 15 (3d Cir. 1981) ("The fact that the sales and other contacts are not expansive is simply a reflection of the reality that the jurisdiction itself is a small one, and market demands may not be great. The continuing conduct of the defendant is purposeful activity intended to preserve and enlarge an active, though small, market in the Virgin Islands."); *Samad v. High Soc'y*

---

[8]We consider these contacts to be the most relevant to our general jurisdiction analysis and note that some of the allegations discussed by our dissenting colleague relate to either the applicability of the long-arm statute or to establishing specific jurisdiction and therefore do not detract from our conclusion. Furthermore, in light of the standard for reviewing a motion to dismiss for lack of personal jurisdiction, we do not think it is appropriate to infer that these recurring contacts are solely the product of unilateral activity on the part of Virgin Islands residents. To the contrary, this pattern of contacts can fairly be viewed as a deliberate targeting or purposeful availment of the Virgin Islands as a market for Renaissance's powerboats rather than as a mere coincidence. Consequently, Renaissance was on notice that it could be haled into court in the Virgin Islands and requiring it to defend suit there should not come as a surprise.

22

*Magazine*, 20 V.I. 554, 557 (D.V.I. 1984) ("To deny jurisdiction over such a defendant merely because its local sales constitute a small percentage of its total sales would be to deny a resident plaintiff the protection of the laws and courts of this Territory merely because the population of this Territory is limited. This the Due Process Clause does not require."). Therefore, in the context of assessing the sufficiency of a nonresident defendant's contacts with a small jurisdiction such as the Virgin Islands, we conclude that, at this stage in the litigation, the Metcalfes have made at least a prima facie showing that general jurisdiction may be exercised over Renaissance.

Because we conclude that the Metcalfes have made this threshold showing, we will not consider whether the facts, when construed in favor of the Metcalfes, also support a finding of specific jurisdiction.

### D. Conducting Jurisdictional Discovery

The Metcalfes also contend that the District Court erred by failing to grant discovery on the question of personal jurisdiction. Although we conclude that the Metcalfes have successfully demonstrated a prima facie case of personal jurisdiction over Renaissance sufficient to survive the Rule 12(b)(2) motion to dismiss, it remains within the District Court's province to weigh the evidence in support of jurisdiction and, after doing so, revisit the jurisdictional issue. *See Carteret Sav. Bank, FA*, 954 F.2d at 142 n.1 ("Of course, by accepting a plaintiff's facts as true when a motion to dismiss is originally made, a court is not precluded from revisiting the issue if it appears that the facts alleged to support jurisdiction are in

23

dispute."). Because the Metcalfes will eventually need to establish jurisdiction by a preponderance of the evidence, *see id.* at 146, the opportunity to conduct jurisdictional discovery is likely to benefit them in this pursuit.

The Supreme Court instructs that "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). We have explained that if "the plaintiff's claim is not clearly frivolous [as to the basis for personal jurisdiction], the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden." *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances*, 723 F.2d 357, 362 (3d Cir 1983). Furthermore, we have found jurisdictional discovery particularly appropriate where the defendant is a corporation. *See id.* In *Compagnie*, we quoted with approval the reasoning of the Court of Appeals for the First Circuit, which stated:

> "'A plaintiff who is a total stranger to a corporation should not be required, unless he has been undiligent, to try such an issue on affidavits without the benefit of full discovery. If the court did not choose to hear witnesses, this may well have been within its province, but in such event plaintiff was certainly entitled to file such further interrogatories as were reasonably necessary and, if he wished, to take depositions.'"

24

*Id.* (quoting *Surpitski v. Hughes-Keenan Corp.*, 362 F.2d 254, 255-56 (1st Cir. 1966)).

Based on our analysis of this case, we find that the Metcalfes' claim is certainly not frivolous and we recognize that they are faced with the difficult task of trying to establish personal jurisdiction over a corporation. Accordingly, we conclude that the Metcalfes ought to have the opportunity to conduct jurisdictional discovery before the District Court makes a final determination with respect to whether it may exercise jurisdiction over Renaissance.[9] We assign no error to the District Court with respect to the lack of discovery on the question of jurisdiction, but on remand, we instruct the District Court to allow discovery to help facilitate the resolution of the jurisdictional issue.

The Metcalfes also argue that the District Court erred when it declined to consider any of the documents filed after the status conference. They contend that the District Court should have considered their additional filings and affidavits because these submissions were timely and provided additional evidence that the exercise of jurisdiction over Renaissance is permissible.

---

[9]Although the Metcalfes never formally moved for jurisdictional discovery, they did mention the possibility of conducting such discovery in their opposition to the motion to dismiss when they stated: "[S]hould this Court want additional evidence regarding Renaissance's contacts with the Virgin Islands, the Metcalfes should be allowed to engage in discovery limited to the issue of personal jurisdiction." This document was among the parties' filings that the District Court considered.

25

Because the District Court has considerable discretion in this realm and "in light of the procedural jumble in which this matter found itself," we cannot conclude that the District Court abused its discretion when it explained that its decision was motivated by an attempt to prevent further confusion as a result of the parties' conflicting and overlapping filings. *See Kiser v. Gen. Elec. Corp.*, 831 F.2d 423, 426 (3d Cir. 1987) ("The decision of a district court to grant or deny leave to amend is reviewed only for an abuse of discretion."). The Metcalfes' argument is even less convincing when we consider the fact that they never actually moved to amend their previous filings. Under the circumstances, the District Court was within its discretion when it declined to consider both the Metcalfes' and Renaissance's additional submissions. Nonetheless, on remand, the parties will have an additional opportunity to present any omitted evidence to the District Court.

**IV.**

We hold that the District Court erred in granting Renaissance's motion to dismiss for lack of personal jurisdiction. When the evidence presented by the Metcalfes is evaluated under the correct standard at this stage of the litigation, we conclude that they are able to make a prima facie showing that the Virgin Islands Long-Arm Statute applies to Renaissance and that the exercise of jurisdiction over Renaissance is consistent with the Due Process Clause. Therefore, we will reverse and remand to the District Court to allow the Metcalfes to conduct jurisdictional discovery before the District Court conclusively decides whether exercising jurisdiction over Renaissance is permissible.

26

STAPLETON, *Circuit Judge*, dissenting:

I agree with my colleagues that the District Court possessed subject matter jurisdiction and that, given the absence of an evidentiary hearing, it erred in failing to accept as true the facts alleged by the Metcalfes. In my view, however, even accepting those facts, the District Court's conclusion that it lacked personal jurisdiction was correct.

A district court sitting in diversity applies the law of the forum state in determining whether personal jurisdiction is proper. Fed. R. Civ. P. 4(c). The reach of the long arm statute of the Virgin Islands was intended by its legislature to be coextensive with the maximum parameters of the Due Process Clause. *Urgent v. Tech. Assistance Bureau*, 255 F. Supp. 2d 532 (D.V.I. 2003). We therefore look to federal Due Process law to determine Renaissance's susceptibility to personal jurisdiction in the Virgin Islands. *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147 (3d Cir. 1996). We summarized that law in *Vetrotex*, 75 F.3d at 150-51:

> The due process limit to the exercise of personal jurisdiction is defined by a two-prong test. First, the defendant must have made constitutionally sufficient "minimum contacts" with the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85

27

L.Ed.2d 528 (1985) (the "constitutional touchstone" of personal jurisdiction is "whether the defendant purposefully established 'minimum contacts' in the forum State"). The determination of whether minimum contacts exist requires an examination of "the relationship among the forum, the defendant and the litigation," *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S. Ct. 2569, 2580, 53 L.Ed.2d 683 (1977), in order to determine whether the defendant has "'purposefully directed'" its activities toward residents of the forum. *Burger King*, 471 U.S. at 472, 105 S. Ct. at 2182 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S. Ct. 1473, 1478, 70 L.Ed.2d 790 (1984)). There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Second, if "minimum contacts" are shown, jurisdiction may be exercised where the court determines, in its discretion, that to do so would comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L.Ed.2d 95 (1945); *Farino*, 960 F.2d at 1222.

My analysis begins with an indisputable proposition. In applying these principles, it "is well established . . . that *a*

*nonresident's contracting with a forum resident, without more, is insufficient to establish the 'minimum contacts' required* for an exercise of personal jurisdiction over the nonresident." *Sunbelt Corp. v. Noble, Denton & Assoc., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993) (emphasis supplied).  *See also Vetrotex*, 75 F.3d at 151.

It is also important in the current context to stress at the outset that it is the defendant who must be shown to have engaged in some affirmative act by which he "purposefully avails [himself] of the privilege of conducting activities in the forum state, thus invoking the benefit and protection of its laws."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  As the Supreme Court explained in *Hanson*, 357 U.S. at 253 (emphasis supplied):

> The unilateral activity of *those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State* . . . . it is essential in each case that there be some act by which the *defendant* purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws.

The facts usually found to constitute "the more" necessary to subject a nonresident who contracted with a forum resident to the jurisdiction of the forum court are notably absent here.  Renaissance is not alleged to have ever had an office,

29

employee or other representative in the Virgin Islands for any purpose. Nor is it alleged to have engaged in sales to distributors or other third parties who sell Renaissance vessels in the Virgin Islands. Further, it is not alleged to have advertised its vessels in the Virgin Islands media or to have in any other way solicited from the Metcalfes or anyone else in the Virgin Islands an offer to purchase a vessel. Finally, Renaissance is not alleged to have shipped any product into the Virgin Islands for sale or, indeed, for any other purpose. The most that is alleged is that it "shrink wrapped" a vessel in its home state of Florida and delivered it to the Metcalfes' shipper at a port in Florida.

As a substitute for the customary allegations, the Metcalfes insist that they have made five allegations that must be accepted as true and that provide the required "more" than the existence of a contract with a forum resident. I am unpersuaded.

The Metcalfes' first and primary argument is based on their allegation that, while Renaissance did not ship the vessel into the Virgin Islands, it "was fully aware that the ultimate destination of the Vessel was the Virgin Islands." App. at 86. The only relevant issue, however, is what *Renaissance did* in the Virgin Islands. Accordingly, I would hold that its knowledge of what the vessel's purchasers intended to do with it after the purchase is irrelevant.[10] It is difficult to imagine a contract of

_____

[10]To the extent that *Four Winds Plaza Corp. v. Caribbean Fire & Assoc.*, 48 V.I. 899 (D.V.I. 2007), and *Buccaneer Hotel Corp. v. Reliance Int'l Sales Corp.*, 17 V.I. 249 (Terr. Ct.

sale between a forum nonresident and a forum resident where the nonresident seller does not have reason to believe that the ultimate destination of the goods will be the forum. Yet, we know that such a contract is not alone enough to subject the seller to the personal jurisdiction of the forum court.

Second, the Metcalfes rely upon their allegation that they first became familiar with the type of vessel they ultimately bought when they rented one in the Virgin Islands from See & Ski, a boat rental firm. They do not claim any relationship between Renaissance and See & Ski, however, other than that the latter from time to time purchases vessels from the former for use in the latter's rental business. The leasing by a Virgin Islands boat rental firm of a Renaissance built vessel owned by the rental firm can hardly be viewed as an act by Renaissance "invoking the benefits and protections of" Virgin Islands law.

Next, the Metcalfes emphasize that they "negotiated the sale from St. John, primarily via the telephone, telefax and the internet." App. at 86. Once again, however, they focus on the wrong party. The Metcalfes make no allegation that Renaissance dispatched anything to the Virgin Islands in whatever discourse led up to the one-time purchase contract. To be sure, it is reasonable to infer from the Metcalfes' alleged use of interstate communication facilities and the alleged existence of a contract that Renaissance's acceptance of the Metcalfes' offer may have been communicated through such facilities to them in the Virgin Islands. But not every telephone call into the

1981), can be read to suggest the contrary, I would overrule those cases.

31

forum state constitutes the kind of "reaching out" to the forum state that subjects a nonresident to its jurisdiction. *Burger King*, 471 U.S. at 479. In *Budget Blinds, Inc. v. White*, 536 F.3d 244 (3d Cir. 2008), for example, we determined that the fact that the parties negotiated an agreement by telephone and mail with the plaintiff remaining in the forum state did not support a finding of minimum contacts with that state. We noted "an important distinction between the negotiations in *Burger King* and those in [*Budget Blinds* in] that the *Burger King* defendant actively sought contract negotiations with a company based in the forum state," whereas in *Budget Blinds*, there was no indication that the non-forum resident had reached out to anyone in the forum. *Budget Blinds*, 536 F.3d at 261. Likewise, in the present case, the fact that reciprocal communications may have occurred between Renaissance and the Metcalfes is not sufficient to establish that Renaissance purposely "reached out" to the Virgin Islands where Renaissance is not alleged to have actively sought contract negotiations with the Metcalfes there.

Fourth, the Metcalfes point to the Renaissance website, attaching as Exhibit A a "copy of link entitled '*Contact Other Owners*.'" App. at 88 (emphasis supplied). As the title of the link suggests, however, Exhibit A cannot accurately be viewed as supporting the Metcalfes' contention that "Renaissance advertises the rental of its vessels on St. Thomas on its website." *Id.* Exhibit A consists of a list of the names of people who have previously purchased vessels from Renaissance along with their email addresses. On the first page, fifteen such vessel owners are listed along with a suggestion that anyone who currently owns a Renaissance vessel and who wants to talk to "other owners" contact them through the addresses provided. Only one

listed owner, See & Ski, appears to be from the Virgin Islands. App. at 89.

We articulated the controlling principle here in *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir 2003), as follows:

> As *Zippo* and the Courts of Appeals decisions indicate, the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant "purposefully availed" itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts.

Exhibit A is not targeted at the Virgin Islands. If it be regarded as targeted at all, it is targeted at anyone anywhere in the world who owns a Renaissance vessel and has an interest in communicating with "other" Renaissance vessel owners. If that targeting is sufficient, Renaissance's website has subjected it to personal jurisdiction anywhere in the world that a Renaissance vessel owner resides, a result that seems inconsistent with *Toys "R" Us*.

Finally, the Metcalfes rely upon their allegation that during some past period of unspecified duration "Renaissance has sold approximately 7 vessels to Virgin Islands residents."

33

App. at 87.  At least three are said to have been sold to See & Ski.  This is, of course, not relevant to whether the District Court can exercise specific personal jurisdiction over Renaissance given that the Metcalfes' claim does not arise from those transactions.  Conceivably, however, these seven sales might provide a foundation upon which to build a prima facie case of general personal jurisdiction (*i.e.*, the presence of currently existing, "continuous and systematic" contacts with the forum, *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001)).  Nevertheless, in the absence of any indication as to when the seven sales were made and whether, unlike the sale to the Metcalfes, they involved some Renaissance activity in the forum, I conclude that the Metcalfes have not come close to alleging a prima facie case of general personal jurisdiction.[11]

---

[11]While the Metcalfes do not so allege, my colleagues note that "Renaissance avers that 'all purchase agreements entered into by and between Renaissance and its customers are subject to a Ten Year Limited Hull Warranty.'" Op. at 19.  That warranty provides that (1) Renaissance will repair defects in workmanship and/or materials without cost to the purchaser, (2) "[a]ny expense for delivery of the boat to the manufacturer for repair will be paid for by the Purchaser," (3) the "laws of the State of Florida shall govern the interpretation and enforcement of this Hull Warranty," (4) "[a]ny action under this Hull Warranty shall be brought in the courts of the state of Florida," and (5) the "remedies contained in the warranty constitute the sole recourse of Purchaser against Seller for breach of any of Seller's obligations under [the] warranty agreement."  App. at 43.  Thus, while it may be true that Renaissance has entered into warranty contracts with residents of the Virgin Islands, the

The only remaining issue is whether we should remand to provide the Metcalfes with an opportunity for jurisdictional discovery. *Toys "R" Us* provides the controlling test:

> If a plaintiff presents factual allegations that suggest "with reasonable particularity" the possible existence of the requisite "contacts between [the party] and the forum state," *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992), the plaintiff's right to conduct jurisdictional discovery should be sustained.

*Toys "R" Us*, 318 F.3d at 456. I read "with reasonable particularity" to mean that if a plaintiff suggests a realistic basis for believing that personal jurisdiction exists, he or she should be allowed to pursue discovery before having to prove that such jurisdiction does exist. In my judgment, the Metcalfes have not met this threshold. But it is not necessary to so hold. The Metcalfes have never requested jurisdictional discovery in the District Court, and it would clearly be unfair to Renaissance to allow them to successfully insist upon it in the course of this appeal.

I would affirm the judgment of the District Court.

------

warranty obligations are to be performed in Florida and hardly can be said to provide the "more" necessary to subject Renaissance to the personal jurisdiction of the District Court.