**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1364
_____

ROBERTO C. MARTINEZ;
MIGUELINA MARTINEZ,
Appellants

v.

UNION OFFICINE MECCANICHE S.P.A.;
ABC CORP. NOS. 1–5;
JOHN DOES NOS. 1–5
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-20-cv-07327)
District Judge:  Honorable Susan D. Wigenton
_____

Argued:  January 11, 2023

Before:  JORDAN, PHIPPS, and ROTH, *Circuit Judges*.

(Filed: May 10, 2023)
_____

Sean T. Payne                      [ARGUED]
Richard M. Winograd                [ARGUED]
GINARTE GALLARDO GONZALEZ & WINOGRAD
400 Market Street
Newark, NJ 07105

    *Counsel for Appellants*

Alexander Pencu                    [ARGUED]
Michael B. Sloan
MEISTER SEELIG & FEIN
125 Park Avenue
7th Floor
New York, NY 10017

Jeffrey Schreiber
MEISTER SEELIG & FEIN
4E&F Auer Court
Williamsburg Commons
East Brunswick, NJ 08816

     *Counsel for Appellee*

———————

OPINION[*]

———————


PHIPPS, *Circuit Judge*.

In 2019, while cleaning his employer's plastic calender machine in New Jersey, Roberto C. Martinez got his hand caught between the rollers, and it was severely injured. Although the accident took place in New Jersey, the machine was designed and manufactured in Italy. New Jersey, through its long-arm statute, *see* N.J. Ct. R. 4:4–4, allows personal jurisdiction to the maximum extent permitted by the Fourteenth Amendment's Due Process Clause. And Martinez along with his wife sued the Italian manufacturer in New Jersey alleging three state-law claims in their amended complaint: defective design, inadequate warning labels, and loss of consortium. The District Court granted the manufacturer's motion to dismiss the Martinezes' claims for lack of personal jurisdiction. Through a timely appeal of that final order, *see* 28 U.S.C. § 1291, the Martinezes contest the District Court's ruling, which, on *de novo* review, we will affirm for the reasons that follow.

In response to a motion to dismiss for a lack of personal jurisdiction, the plaintiff bears the burden of establishing such jurisdiction. *See Metcalfe v. Renaissance Marine,*

———

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

*Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). That requires evidence of "minimum contacts" with the forum state such that maintaining the suit would not "offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Here, the Martinezes do not attempt to meet that burden through general jurisdiction – which would require showing that the machine's manufacturer, Union Officine Meccaniche S.P.A. ('Union'), was "essentially at home" in New Jersey. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Rather, they argue that Union was within New Jersey's specific jurisdiction.

When, as here, a district court does not hold an evidentiary hearing in response to a motion to dismiss, a plaintiff must make a *prima facie* showing of jurisdiction on the written record. *See* 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1351 (3d ed. updated Apr. 2022). For specific jurisdiction, such a showing has two necessary components. The first is the out-of-state defendant's purposeful availment of the forum. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."). The second is a "strong relationship" between "the defendant, the forum, and the litigation." *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1028 (2021)). If the written record, construed in favor of the plaintiff, *see Metcalfe*, 566 F.3d at 330–31, does not support those two components of a *prima facie* showing, then it is unnecessary to examine whether any "rare" and "compelling" circumstances would

3

render the exercise of personal jurisdiction unfair. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 324–25 (3d Cir. 2007).

For the first requirement, the record does not establish that Union purposefully availed itself of New Jersey before or while selling the machine. In the specific context of the transmission of goods into a forum, purposeful availment requires the defendant to "have targeted the forum" deliberately. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) (plurality); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985) (explaining that, as a general matter, a defendant purposefully avails itself of a forum by deliberately engaging in significant activities there, or alternatively, by creating continuing obligations with forum residents). But before and while selling the machine, Union did not engage "in conduct purposefully directed at New Jersey." *J. McIntyre*, 564 U.S. at 886. The record does not demonstrate that Union ever advertised its products in New Jersey. And of the estimated 700 calender machines that Union manufactured since 1950, only this one went to New Jersey. Also, the decision to place the machine in New Jersey was not made by Union but rather by Martinez's employer, Primex Plastics Corporation, which selected the New Jersey facility over its facilities in other states. At most, an independent sales agent based in the United Kingdom visited Primex's New Jersey plant to discuss Primex purchasing the machine. But that is too tenuous a connection to constitute an intentional targeting of the New Jersey market by Union.

After the machine's sale and placement in New Jersey, Union increased its contacts there. It sent representatives to New Jersey to oversee installation. Later, its representatives traveled to New Jersey to train Primex and maintain the machine. Sometimes those representatives stayed in New Jersey for weeks at a time. And one time after the installation, Union's chief executive officer visited the Primex facility in New

Jersey. In addition to those physical contacts, after the sale, Union representatives began to communicate with Primex by email, telephone, and remote access software. Regardless of whether those post-sale contacts were promised with the machine's sale or were efforts to nurture a customer relationship, they amount to deliberate targeting by Union of New Jersey for its business. Thus, after the sale of the calender machine, Union purposefully availed itself of New Jersey.

But even with that post-sale purposeful availment, there is not a "strong relationship" between "the defendant, the forum, and the litigation." *Hepp*, 14 F.4th at 208 (quoting *Ford*, 141 S. Ct. at 1028). The first claim – for defective design under the New Jersey Products Liability Act, *see* N.J. Stat. Ann. § 2A:58C–2 – lacks such a strong relationship. Although "some relationships will support jurisdiction without a causal showing," *Ford*, 141 S. Ct. at 1026, to support the exercise of specific jurisdiction, Union's actions in New Jersey, which are not alleged to have caused any of the claimed injuries, had to have included more than mere efforts to keep its one customer in New Jersey happy. That is especially so here where those efforts did not involve core characteristics of the products liability claim: the design and manufacture of the machine or any of its parts in New Jersey. Nor did Union advertise or seek other customers in New Jersey, and it has not opened a permanent office there. Thus, Union's contacts in relation to this claim and the forum did not suffice for specific jurisdiction. For similar reasons, Union's contacts with New Jersey also foreclose the exercise of specific jurisdiction over the Martinezes' claim concerning the machine's alleged dangerousness and inadequate warnings, in violation of the New Jersey Consumer Fraud Act, *see* N.J. Stat. Ann. § 56:8–2. Finally, the loss-of-consortium claim adds nothing to Union's

5

contacts with New Jersey, and without personal jurisdiction over Union for the other two claims, this count was correctly dismissed as well.

In advocating in favor of New Jersey's personal jurisdiction over Union, the Martinezes rely heavily on the Supreme Court's decision in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021). In that opinion, the Supreme Court explained that the forum state in each of two consolidated cases could exert personal jurisdiction over an automobile manufacturer, Ford Motor Company, for tort claims prompted by vehicle crashes in each forum even though Ford had not manufactured, designed, or sold either vehicle in either forum. *Id.* at 1023–24. But the nature of Ford's contacts with each forum drove that outcome. Ford engaged in "wide ranging-promotional activities, including television, print, online, and direct-mail advertisements." *Id.* at 1022. Ford shipped the same model vehicles to each forum for sale, and its network of dealers "offer[ed] an array of maintenance and repair services." *Id.* at 1022–23, 1028. Ford also encouraged a resale market for its products and provided "original parts to auto supply stores and repair shops across the country." *Id.* at 1022–23. For these reasons, the Supreme Court concluded that Ford "systematically served a market" in the forum states. *Id.* at 1028. But Union is not Ford. The nature of its contacts with New Jersey pale in comparison to Ford's contacts with the forum states, and Union cannot be said to systematically serve a market in New Jersey. Thus, under *Ford*, Union's post-sale purposeful availment of New Jersey did not result in a strong relationship between Union, New Jersey, and the claims the Martinezes now bring.

For the foregoing reasons, the judgment of the District Court will be affirmed.