# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

GREEN AMERICA RECYCLING, LLC,   )
                    Plaintiff,  )
                                )

v.                          )
                                )

CLEAN EARTH, INC.,           )     C.A. No. N20C-07-189
      Defendant/Third-Party Plaintiff,  )         PRW CCLD
                                )

v.                          )
                                )

ENSIGN-BICKFORD AEROSPACE &     )
DEFENSE COMPANY,           )
          Third-Party Defendant.  )

Submitted: May 27, 2021
Decided: June 1, 2021

*Upon Third-Party Defendant Ensign-Bickford Aerospace & Defense Company's
Motion to Dismiss for Lack of Personal Jurisdiction,*
**GRANTED.**

## MEMORANDUM OPINION AND ORDER

Michael C. Heyden, Jr., Esquire (Argued), Tianna S. Bethune, Esquire, GORDON REESE SCULLY MANSUKHANI LLP, Wilmington, Delaware, *Attorneys for Defendant-Third-Party Plaintiff Clean Earth, Inc*.

Jeffrey L. Moyer, Esquire, Dorronda R. Bordley, Esquire, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; David L. Coffman, Esquire (Argued), Joseph Kellmeyer, Esquire, Sara L. Chamberlain, Esquire, THOMPSON COBURN LLP, St. Louis, Missouri, *Attorneys for Third-Party Defendant Ensign-Bickford Aerospace & Defense Company*.

**WALLACE, J.**

This case arises from a botched disposal of hazardous waste. Green America Recycling, LLC alleges Clean Earth, Inc. negligently shipped barrels of explosive chemicals that detonated inside Green America's facility. After contesting Green America's allegations, Clean Earth impleaded Ensign-Bickford Aerospace & Defense Company ("EBAD")—the entity accused of packaging the powder keg. According to Clean Earth, EBAD is responsible for its unwitting transport of incendiaries to Green America because EBAD obscured the barrels' warning labels in breach of a contract under which Clean Earth says it agreed to extract EBAD's non-explosive waste only.

EBAD has moved to dismiss for lack of personal jurisdiction. Clean Earth's complaint fails to draw a reasonably conceivable connection between Delaware and its claims against EBAD. At argument, Clean Earth admitted as much. So, to salvage its impleaded case, Clean Earth requests jurisdictional discovery to determine one thing: whether it has a written waste disposal agreement with EBAD that contains a Delaware forum selection clause.

Ordinarily, a logical and limited ask like this one would be enough to table a defendant's dismissal motion. But not here. No such contract seems to exist. Neither party has one, and none of their managers can find one or remembers one ever being drafted. And so, because Clean Earth conceded that the only way to get EBAD into Delaware would be via a contract with an express forum selection clause,

the Court won't allow Clean Earth to rummage for jurisdictional keys it has no real chance of finding. Accordingly, EBAD's motion is **GRANTED** and Clean Earth's third-party complaint is **DISMISSED**.

## I. FACTUAL BACKGROUND

### A. THE PARTIES AND THEIR JURISDICTIONAL STATEMENTS.

Green America is a Missouri limited liability company headquartered in Chesterfield, Missouri.[1] Clean Earth is a Delaware entity[2] headquartered in Hatboro, Pennsylvania.[3] And EBAD is a Connecticut corporation headquartered in Simsbury, Connecticut.[4]

Green America premises jurisdiction over Clean Earth on Clean Earth's Delaware domicile and those parties' Delaware forum selection clause.[5] Clean Earth, in contrast, premises jurisdiction over EBAD on this bespoke iteration of Delaware's long-arm statute:

> This Court has jurisdiction over this dispute because [EBAD] contracted with and caused harm to Delaware business entities.

---

[1] Green Am. Compl. ¶ 3, July 17, 2020 (D.I. 1).

[2] Clean Earth, named as a corporation in this action, avers that it has been restructured as a limited liability company. Clean Earth Ans. & Third-Party Compl. ¶ 1, Sept. 23, 2021 (D.I. 5) (hereinafter, "Clean Earth Compl."). Clean Earth's transition is not relevant to the instant motion.

[3] *Id.*

[4] *Id.* ¶ 2.

[5] Green Am. Compl. ¶¶ 5-9; *see* Green Am. Compl., Ex. A§ 18 (Waste Services Distributor Agreement); *see generally* DEL. CODE ANN. tit. 6, § 2708(b) (2020).

[EBAD] furthermore regularly does or solicits business, engages in any other persistent course of conduct in the State of Delaware, and/or derives substantial revenue from services, or things used or consumed in the State of Delaware.[6]

## B. THE EXPLOSION IN HANNIBAL, MISSOURI.

EBAD operates a weapons manufacturing site in Kentucky that generates flammable and hazardous waste.[7] To rid itself of those chemicals, EBAD often hires[8] Clean Earth to remove them.[9] Whenever EBAD calls Clean Earth, the two follow a standard disposal procedure.[10] Clean Earth travels from its Kentucky-based facility to EBAD's Kentucky-based facility.[11] Once the waste is isolated for extraction, the two check it against a schedule of substances denominated as suitable for Clean Earth's transport (the "Profile").[12] After certifying compliance, Clean Earth hauls the waste away and stewards it for reuse by, among others, Clean Earth's

---

[6] *Compare* Clean Earth Compl. ¶ 3 (cleaned up) *with* DEL. CODE ANN. tit. 10, § 3104(c) (2020).

[7] Clean Earth Compl. ¶¶ 4-5.

[8] The Court uses this word to reflect Clean Earth's vague descriptions of its arrangement with EBAD. *See, e.g.*, *id.* ¶ 3 (referring to its dealings with EBAD as a "course of conduct"). As explained more fully later, Clean Earth has not produced a formal agreement with EBAD and the most generous reading of its complaint supports the existence only of an informal, services-based relationship built on invoices.

[9] *Id.* ¶¶ 4-5.

[10] *Id.*

[11] *Id.* ¶ 5.

[12] *Id.*

sustainable energy partners.[13]  And EBAD ultimately receives an invoice from Clean Earth's Pennsylvania office, marking the job complete.[14]

For the better part of a decade, the parties' relationship weathered without incident.[15]  That all changed on March 19, 2020.  That day, EBAD summoned Clean Earth's retrieval of six chemical barrels EBAD designated as "GAP Solvent Waste."[16]  Though flammable and hazardous, GAP Solvent Waste is not explosive and therefore is portable under the Profile.[17]  Thinking little of it, Clean Earth arrived at EBAD's Kentucky-based plant and accepted the barrels.[18]  Thereafter, it delivered those barrels to Green America's Missouri-based recycling facility.[19]  But, when Green America began processing the barrels, they detonated, destroyed some machines, and injured its personnel.[20]  In the fallout, Clean Earth's investigation turned up a likely culprit: EBAD.[21]  Clean Earth claims that EBAD's employees

---

[13]  *Id.* ¶¶ 5, 12.

[14]  Unsworn Aff. of Jason C. Smith, EBAD Senior Vice President of Fin. & Conts. ¶ 7, Jan. 25, 2021(D.I. 10) (hereinafter, "Smith Aff.").

[15]  Clean Earth Compl. ¶ 4.

[16]  *Id.* ¶¶ 6-7.

[17]  *Id.* ¶ 6.

[18]  *Id.* ¶ 7.

[19]  *Id.* at Fifth Affirmative Defense.

[20]  *Id.* ¶ 13; Green Am. Compl. ¶¶ 1, 31, 33.

[21]  Clean Earth Compl. ¶ 8.

"painted over the [barrels'] explosive labels," concealing the danger and spurring its delivery of "an explosive material," not GAP Solvent Waste.[22] To clean up the mess, all three firms resorted to litigation.

## C. THE (THIRD-PARTY) LITIGATION.

Last summer, Green America sued Clean Earth in this Court for breach of contract, negligence, and indemnification.[23] In the primary litigation, Green America seeks damages for Clean Earth's delivery of non-conforming waste, its failure to exercise due care in ensuring the waste was non-explosive, and its refusal to cover the costs of restoring its ravaged facility.[24] Almost immediately, Clean Earth denied and defended the allegations and impleaded EBAD.[25]

Through its third-party complaint, Clean Earth alleges EBAD breached an unproduced[26] contract under which they purportedly agreed Clean Earth would

---

[22] *Id.*

[23] *See generally* Green Am. Compl.

[24] *Id.* ¶¶ 46-65 & Prayer for Relief.

[25] *See generally* Clean Earth Compl.

[26] Clean Earth averred that it does not have the contract and claimed that EBAD does. In response, EBAD's managers declared that EBAD does not. *See* Smith Aff. ¶ 8 ("*To the extent there was a contract or other agreement* between Clean Earth and EBAD, that contract was negotiated and executed in Kentucky." (emphasis added)); Unsworn Aff. of Cary Franklin, EBAD Dir. of Operations ¶ 5, Mar. 25, 2021 (D.I. 22) (hereinafter, "Franklin Aff.") ("I have conducted a search of potentially relevant files and information but am unaware of the existence of any written master agreement between EBAD and Clean Earth.").As discussed below, Clean Earth offers no reason for the Court to question EBAD's representations that doom Clean Earth's discovery request.

remove EBAD's non-explosive waste only.[27]  Along those accusations' lines, Clean Earth also charges EBAD with negligently obscuring the explosive barrels' labels—the epicenter of Green America's dispute with Clean Earth.[28]  As a result, Clean Earth levels a third count against EBAD for indemnification of, or contribution to, any judgment Green America obtains in the primary litigation.[29]  In Clean Earth's view, EBAD's indiscretions should add up to "contractual and compensatory" damages.[30]

EBAD has moved to dismiss the third-party complaint for lack of personal jurisdiction.[31]  EBAD contends that Clean Earth's conclusory incantation of Delaware's long-arm statute is insufficient to hale it into this Court.[32]  EBAD alternatively asserts that, even if the long-arm statute were available, its application to EBAD's dearth of Delaware-based contacts would violate federal due process.[33]

---

[27]  Clean Earth Compl. ¶¶ 9, 13-16.

[28]  *Id.* ¶¶ 17-23.

[29]  *Id.* ¶¶ 24-27.

[30]  *Id.* at Prayer for Relief §§ (a)-(b).

[31]  Mot. to Dismiss (D.I. 10).

[32]  Third-Party Def.'s Opening Br. at 4-8 (D.I. 10).

[33]  *Id.* at 8-11.

In opposition, Clean Earth advanced three theories of specific jurisdiction it believed were supported both by its complaint and Delaware law: (1) "knowingly contract[ing] with a Delaware entity;" (2) harming a Delaware entity outside Delaware; and (3) executing a Delaware forum selection clause.[34] At argument, though, Clean Earth forfeited theories (1) and (2).[35] This winnowing has left Clean Earth's forum selection clause theory. On that, Clean Earth has requested jurisdictional discovery to find any contract between the parties.[36] Specifically, Clean Earth seeks to exhume an "aged document" that "may confer jurisdiction" over a party with whom it has a deal "difficult to discern."[37] EBAD urges the Court to reject this proposal because it would allow Clean Earth to set sail on a "fishing expedition" rendered futile by EBAD's positive representations that no written contract exists.[38]

---

[34] Third-Party Pl.'s Opp'n Br. at 1, 3-4, Mar. 2, 2021 (D.I. 17) (hereinafter, "Clean Earth Br.").

[35] Mot. to Dismiss Hr'g Tr. at 7-8, May 27, 2021 (D.I. 24) (hereinafter, "Arg. Tr.") ("The Court: As I read it, . . . it seems [] you are telling me the [c]omplaint itself is not specified [enough] for the Court to find jurisdiction [and] jurisdictional discovery is needed to establish [jurisdiction]." [Clean Earth's counsel]: "Correct. . . . Essentially, all we are looking for is to see the contract. . . ."); *id.* at 9 ([Clean Earth's counsel]: "We're not asking for a lot here. This is just sort of the predicate step to ensure that if we do find the contract . . . we don't have to come back to Delaware. . . ."); *id.* at 16-17 ("The Court: [A]re you in agreement that the only way jurisdiction would devolve here at this point . . . would be if there was, in fact, a written agreement . . . that had a Delaware forum selection clause?" [Clean Earth's counsel]: "Yes, that does appear to be the case.").

[36] Clean Earth Br. at 3-4.

[37] *Id.*

[38] Third-Party Def.'s Reply Br. at 1-7 ; Smith Aff. ¶ 8; Franklin Aff. ¶ 5; *see supra* note 26.

## II. STANDARD OF REVIEW

A non-resident defendant may move to dismiss for lack of personal jurisdiction under this Court's Civil Rule 12(b)(2).[39] "Generally, a plaintiff does not have the burden to plead in its complaint facts establishing a court's personal jurisdiction over [a non-resident] defendant."[40] But, when Rule 12(b)(2) is invoked, the plaintiff does shoulder such a burden.[41] And where, as here, no meaningful discovery has been conducted, that burden is a *prima facie* one.[42] In assessing the plaintiff's lift, the Court "is not limited to the pleadings and can consider affidavits, briefs of the parties," and the record as a whole.[43] Still, "unless contradicted by

---

[39] Del. Super. Ct. Civ. R. 12(b)(2).

[40] *Focus Fin. Partners, LLC v. Holsopple*, 241 A.3d 784, 800 (Del. Ch. 2020) (internal quotation marks and citation omitted). Precedent resolving dismissal motions filed under the Court of Chancery's analogue rules is usually of equal influence when addressing those filed under this Court's. *E.g.*, *CLP Toxicology, Inc. v. Casla Bio Holdings LLC*, 2020 WL 3564622, at *9 n.65 (Del. Ch. June 29, 2020) (finding no difference in the Rule 12(b)(2) context and collecting authority); *see also Humanigen, Inc. v. Savant Neglected Diseases, LLC*, 238 A.3d 194, 199 n.21 (Del. Super. Ct. 2020) (finding no difference in the Rule 12(b)(6) context and collecting authority). So, the Court cites to both courts' cases herein.

[41] *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 437-38 (Del. 2005).

[42] *E.g.*, *Endowment Rsch. Grp., LLC v. Wildcat Venture Partners, LLC*, 2021 WL 841049, at *4 (Del. Ch. Mar. 5, 2021). Courts also have characterized the plaintiff's pre-jurisdictional discovery burden as "affirmative proof." *E.g.*, *CLP Toxicology*, 2020 WL 3564622, at *10 (internal quotation marks and citation omitted); *Hartsel v. Vanguard Grp., Inc.*, 2011 WL 2421003, at *7 (Del. Ch. June 15, 2011) (citations omitted), *aff'd*, 2012 WL 171881 (Del. Jan. 19, 2012). Any semantic difference is immaterial here. As discussed below, Clean Earth's jurisdictional showing is deficient by any measure.

[43] *Hartsel*, 2011 WL 2421003, at *7 (citations omitted); *accord Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007).

affidavit," the Court must (1) accept as true all well-pleaded allegations in the complaint;[44] and (2) construe the record in the light most favorable to the plaintiff.[45]

## III. DISCUSSION

Waiver aside,[46] jurisdiction over a non-resident defendant typically flows from two sources. The plaintiff deploys a statute.[47] Or, the defendant consents contractually.[48] Clean Earth's submissions map both routes to reach EBAD. As mentioned, however, Clean Earth abandoned its principal arguments in favor of a discovery request designed to bolster its jurisdiction-by-contract theory.[49]

---

[44] *Hartsel*, 2011 WL 2421003, at *7 (citations omitted). Because this undertaking is substantially similar to Rule 12(b)(6) review, the Court will eschew conclusory allegations, *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998), and rebuff strained interpretations of the facts, *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001). *E.g.*, *Mabey v. Crystalite Bohemia, S.R.O.*, 2018 WL 775402, at *3 (Del. Super. Ct. Feb. 6, 2018) (Though entitled to favorable inferences on Rule 12(b)(2) review, "the plaintiff must plead specific facts and cannot rely on mere conclusory assertions." (internal quotation marks and citation omitted)).

[45] *Holsopple*, 241 A.3d at 801 (citations omitted).

[46] *See* Del. Super. Ct. Civ. R. 12(h)(1) (codifying the waiver effects of a procedural default on R. 12(b) defenses, including on personal jurisdiction defenses); *see generally Plummer v. Sherman*, 861 A.2d 1238, 1243-44 (Del. 2004) (explaining waiver-by-Rule in the personal jurisdiction context); *Massey v. Ball*, 595 A.2d 390, 394 (Del. 1991) (explaining waiver-by-appearance in the personal jurisdiction context).

[47] *See Matthew v. Fläkt Woods Grp. SA*, 56 A.3d 1023, 1027 (Del. 2012) ("We decide whether a Delaware court has jurisdiction over a nonresident defendant in a two-step analysis. First, the court must determine whether Delaware's long arm statute, 10 *Del. C.* § 3104(c), is applicable.").

[48] *See Holsopple*, 241 A.3d at 801 (noting that there are "a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court' and that "[o]ne such arrangement is a forum-selection clause in a contract. . . ." (citations omitted)).

[49] *See* Arg. Tr. at 7-9, 16-17.

-10-

Nonetheless, for the sake of completeness and to confirm the Court's lack of jurisdiction, this decision both hews to Clean Earth's concessions and discusses, in abbreviated form, why its theories, even if not already discarded, would fail.

### A. THIS COURT LACKS PERSONAL JURISDICTION OVER EBAD.

When a plaintiff invokes Delaware's long-arm statute, the Court's analysis thereon is textual and constitutional and proceeds respectively.[50] The Court first determines whether jurisdiction is authorized by the statute.[51] If it is, the Court then considers whether exercising jurisdiction nevertheless would violate federal due process, *i.e.*, whether the defendant has "minimum contacts" with Delaware such that a lawsuit against it here would be reasonably foreseeable.[52] These are questions of law and fact[53] and the plaintiff's burden includes the weight of both the statutory and constitutional analyses.[54]

---

[50] *Matthew*, 56 A.3d at 1027; *see, e.g.*, *Mabey*, 2018 WL 775402, at *3 (applying this two-step framework); *accord Cuppels v. Mountaire Corp.*, 2020 WL 3414848, at *3 (Del. Super. Ct. June 18, 2020) ("[T]he Delaware Supreme Court has not collapsed the [statutory] analysis . . . into the federal Constitutional Due Process analysis. Therefore, to exercise personal jurisdiction over a nonresident [d]efendant, [the Court] must separately determine that [it has] personal jurisdiction under both state and federal law." (citation omitted)).

[51] *E.g.*, *Hercules Inc. v. Leu Tr. & Banking (Bahamas) Ltd.*, 611 A.2d 476, 480-81 (Del. 1992).

[52] *Matthew*, 56 A.3d at 1027 (internal quotation marks omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[53] *See In re Asbestos Litig.*, 2015 WL 556434, at *3 (Del. Super. Ct. Jan. 30, 2015) ("A motion under Rule 12(b)(2) presents a factual matter, not a legal question alone." (citing *Hart Holding Co., Inc. v. Drexel Burnham Lambert Inc.*, 593 A.2d 535, 538 (Del. Ch. 1991))).

[54] *E.g.*, *Lisa, S.A. v. Mayorga*, 2009 WL 1846308, at *5 (Del. Ch. June 22, 2009), *aff'd*, 993 A.2d 1042 (Del. 2010).

Title 10, section 3104(c) of the Delaware Code enumerates an exhaustive list of contacts through which a Delaware court can exercise personal jurisdiction over a non-resident defendant who has not consented to suit here. Under the statute, "a court may exercise personal jurisdiction over any non[-]resident . . . who in person or through an agent:"

(1) transacts any business or performs any character of work or service in Delaware;

(2) contracts to supply services or things in Delaware;

(3) causes tortious injury in Delaware by an act or omission in Delaware;

(4) causes tortious injury inside or outside Delaware by an act or omission inside Delaware if the nonresident defendant regularly does or solicits business in Delaware, engages in any other persistent course of conduct in Delaware, or derives substantial revenue from services or things used or consumed in Delaware;

(5) has an interest in, uses or possesses real property in Delaware; or

(6) contracts to provide insurance for a Delaware-located risk, unless the parties agree otherwise.[55]

Read charitably, Clean Earth's allusions to section 3104(c) implicate subsections (1), (2), (3), and (4). At bottom, each of these requires Clean Earth to

---

[55] DEL. CODE ANN. tit. 10, § 3104(c) (cleaned up).

demonstrate with affirmative proof that EBAD took "an act" in Delaware.[56] Clean Earth hasn't.

EBAD chartered in Connecticut, where it operates principally. Clean Earth accepted the waste from EBAD's Kentucky-based facility. The waste was shipped from Kentucky to Green America's Missouri-based facility, where it detonated. The record evidences that Clean Earth invoiced EBAD for the removal from Clean Earth's Pennsylvania headquarters with instruction to send payment there.[57] And the record shows that EBAD derives perhaps 0.1% of its annual sales revenue from Delawareans.[58] Accordingly, there is no statutory (or constitutional) basis for exercising personal jurisdiction over EBAD.[59]

---

[56] *CLP Toxicology*, 2020 WL 3564622, at *13 (second and third citation omitted) (citing *Mobile Diagnostic Grp. Holdings, LLC v. Suer*, 972 A.2d 799, 804 (Del. Ch. 2009)).

[57] Smith Aff. ¶ 7.

[58] *Id.* ¶ 9; *cf.* DEL. CODE ANN. tit. 10, § 3104(c)(4) (requiring that Delaware-based gains be "substantial"). In any event, income alone is not a ground on which to rest personal jurisdiction. *See e.g.*, *Hart Holding Co., Inc. v. Drexel Burnham Lambert Inc.*, 1992 WL 127567, at *5 (Del. Ch. May 28, 1992) (rejecting personal jurisdiction theory based on "passive receipt of income" earned from Delaware companies' securities). And, because the "substantial revenue" contact implicates general jurisdiction, *e.g.*, *Comput. People, Inc. v. Best Int'l Grp., Inc.*, 1999 WL 288119, at *5, *7 (Del. Ch. Apr. 27, 1999) (explaining why § 3104(c)(4) is a general jurisdiction provision), Clean Earth has conceded its absence, *see* Clean Earth Br. at 1 ("EBAD's Motion to Dismiss should be denied while the parties conduct jurisdictional discovery as to whether *specific jurisdiction* exists." (emphasis added)); *see also* Arg. Tr. at 17 (Clean Earth) (conceding specific jurisdiction only may lie via a Delaware-specific forum selection clause).

[59] *Cf. Hercules*, 911 A.2d at 480-81 (Delaware's long-arm statute must "be broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause." (citations omitted)). By negative inference, Clean Earth's total failure to demonstrate that EBAD engaged in any act in Delaware renders a federal due process analysis unnecessary. *See Endowment Rsch.*, 2021 WL 841049, at *4-6 (declining to engage federal due process analysis where statutory bases

Clean Earth offered two statutory counterarguments in its brief that Delaware courts reject repeatedly: contracting with a Delaware entity,[60] and harming a Delaware entity outside Delaware.[61]  It has since abandoned them.  It now rests entirely on its jurisdictional discovery request, through which it hopes to prop up its Delaware forum selection clause theory.  That bid falls short.

## B. JURISDICTIONAL DISCOVERY IS UNWARRANTED.

The bar for obtaining jurisdictional discovery is "quite low."[62]  "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the parties and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained."[63]  In other

---

for jurisdiction failed); *CLP Toxicology*, 2020 WL 3564622, at *13-16 (same and also with additional theories).

[60]  *E.g.*, *Abajian v. Kennedy*, 1992 WL 8794, at *10 (Del. Ch. Jan. 17, 1992) ("It is well established law that merely contracting with an entity that is incorporated within [Delaware] does not provide necessary connections between the contract and [Delaware] to support a finding of jurisdiction." (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985))).

[61]  *E.g. In re Talc Prod. Liab. Litig.*, 2018 WL 4340012, at *4 (Del. Super. Ct. Sept. 10, 2018) ("[T]he relationship [to Delaware] must arise out of contacts that the defendant *himself* creates . . . . not based on the random, fortuitous or attenuated contacts he makes by interacting with . . . persons affiliated with [Delaware]." (emphasis in original) (internal quotation marks omitted) (quoting *Walden v. Fiore*, 571 U.S. 277, 284-86 (2014))); *see AeroGlobal*, 871 A.2d at 440 ("[T]he nonresident defendant's contacts with the forum must rise to such a level that it should 'reasonably anticipate' being required to defend suit in Delaware's courts." (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980))).

[62]  *Degregorio v. Marriott Int'l, Inc.*, 2018 WL 3096627, at *9 (Del. Super. Ct. June 20, 2018) (internal quotation marks and citation omitted).

[63]  *CLP Toxicology*, 2020 WL 3564622, at *15 (cleaned up) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)); *see Otto Candies, LLC v. KPMG LLP*, 2017 WL

words, if the plaintiff identifies a non-frivolous nexus connecting the defendant to Delaware, a court "should allow some discovery for the limited purpose of" confirming that link.[64] But the word "non-frivolous" is critical.[65] If the proffered jurisdictional tie lacks a legal *or factual* basis, jurisdictional discovery on it will be denied as futile.[66] Otherwise, a court might inappropriately condone a dragnet

3175619, at *5 (Del. Super. Ct. July 26, 2017) ("As a plaintiff does have an evidentiary burden to establish personal jurisdiction, it may not be precluded from attempting to prove that a defendant is subject to the jurisdiction of the court, and may not ordinarily be precluded from reasonable discovery in aid of mounting such proof." (cleaned up) (quoting *Hart Holding*, 593 A.2d at 538)).

[64] *Otto Candies*, 2017 WL 3175619, at *5 (citations omitted); *but see Reid v. Siniscalchi, L.L.C.*, 2011 WL 378795, at *11 (Del. Ch. Jan. 31, 2011) ("The scope of [jurisdictional] discovery . . . is within the discretion of the Court." (citation omitted)); *Am. Scheduling, Inc. v. Radiant Sys., Inc.*, 2005 WL 736889, at *1 (Del. Ch. Feb. 9, 2005) ("[T]he trial court *may* permit the plaintiff jurisdictional discovery. . . ." (emphasis in original) (citations omitted)).

[65] *E.g.*, *In re Dissolution of Arctic Ease, LLC*, 2016 WL 7174668, at *5 n.50 (Del. Ch. Dec. 9, 2016) ("Without a non-frivolous ground for personal jurisdiction, jurisdictional discovery is not appropriate." (internal quotation marks omitted) (quoting *In re Am. Int'l Grp., Inc.*, 965 A.2d 763, 816 n.195 (Del. Ch. 2009))); *Reid*, 2011 WL 378395, at *11 ("The Court generally may not preclude jurisdictional discovery where the plaintiff asserts any non-frivolous basis for jurisdiction. . . ." (citations omitted)); *see Degregorio*, 2018 WL 3096627, at *9 (A jurisdictional "discovery request will . . . be denied if it is only based upon . . . unsupported assertions . . ., or when a plaintiff's claim appears to be clearly frivolous." (internal quotation marks and citation omitted)); *Am. Scheduling*, 2005 WL 736889, at *1 (observing that jurisdictional discovery should be granted "so long as plaintiff's claim of jurisdiction is not frivolous." (citations omitted)); *see also Deutsche Bank AG v. Devon Park Bioventures, L.P.*, 2019 WL 3227633, at *3 (Del. Ch. July 15, 2019) (detecting "no genuine conflict among the trial courts in Delaware" on the "non-frivolous ground for jurisdiction" discovery standard (citations omitted)), *appeal refused*, 2019 WL 3938523 (Del. Aug. 20, 2019).

[66] *See, e.g.*, *Hart Holding*, 593 A.2d at 539 ("Only where the *facts* alleged in the complaint make any claim of personal jurisdiction [] frivolous" may jurisdictional discovery be denied. (emphasis added) (citation omitted)); *accord Endowment Rsch.*, 2021 WL 841049, at *6; *CLP Toxicology*, 2020 WL 3564622, at *15; *Otto Candies*, 2017 WL 3175619, at *5; *In re Am. Int'l Grp.*, 965 A.2d at 816 n.195; *see also Pagliara v. Fed. Nat'l Mortg. Ass'n*, 2017 WL 2352150, at *3-5 (Del. Ch. May 31, 2017) (denying jurisdictional discovery as futile where facts gave rise to collateral estoppel).

-15-

"fishing expedition" unmoored from a good faith objective.[67]  And so, if, taking the record and the theory together, the plaintiff "does not explain how discovery would provide 'something more' needed to establish personal jurisdiction," then jurisdictional discovery, however narrow, is unwarranted.[68]  Clean Earth's postulated "something more" is a specific Delaware forum selection clause in a potential document somewhere.  The Court, then, must determine whether a search for such a clause would be frivolous—legally or factually.

When a contract provision purports to supply a Delaware court with jurisdiction, that court must determine whether the provision reflects the defendant's express or implied consent to suit here.[69]  Not every reference to Delaware law will suffice.  For example, a Delaware choice-of-law clause, without more, does not express or imply consent to jurisdiction in Delaware.[70]  But, unambiguous and willingly-drafted Delaware forum selection clauses do.[71]

---

[67]  *CLP Toxicology*, 2020 WL 3564622, at *15 (citing *In re Am. Int'l Grp.*, 965 A.2d at 816 n.195).

[68]  *CLP Toxicology*, 2020 WL 3564622, at *15; *accord Endowment Rsch.*, 2021 WL 841049, at *6; *Toys "R" Us*, 318 F.3d at 456.

[69]  *See Holsopple*, 241 A.3d at 801-02.

[70]  *E.g.*, *Mobile Diagnostic*, 972 A.2d at 805.

[71]  *Holsopple*, 241 A.3d at 801 ("Where the parties to the forum selection clause have consented freely and knowingly to the court's exercise of jurisdiction, the clause is sufficient to confer personal jurisdiction on a court." (internal quotation marks and citations omitted)); *accord Genuine Parts Co. v. Cepec*, 137 A.3d 123, 148 (Del. 2016); *Nat'l Indus. Grp. (Holding) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 381 (Del. 2013); *see also Holsopple*, 241 A.3d at 801 nn.2-3 (collecting supportive authority from the Supreme Court of the United States).

Freedom of contract animates this distinction. With a choice-of-law clause, parties calibrate predictability of decision, not of decisionmaker.[72] Any court can apply bargained-for law to a contract; unless named, a particular tribunal need not be the one to do it.[73] Different is when parties voluntarily agree that a lawsuit may be maintained solely in one place. In doing so, they necessarily decide that only there can a court's jurisdiction over a contract's parties properly be exercised.[74] Indeed, that exchange will be enforced regardless of a party's residence or contacts, or its belated objections.[75] And so, in the abstract, Clean Earth's forum selection clause theory is not legally frivolous. On this record, though, it is factually frivolous.

---

[72] *E.g.*, *ABRY Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1048 (Del. Ch. 2006) ("Parties operating in interstate and international commerce seek, by a choice of law provision, certainty as to the rules that govern their relationship.").

[73] *See, e.g.*, *In re Gen. Motors (Hughes) S'holder Litig.*, 2005 WL 1089021, at *22 & n.200 (Del. Ch. May 4, 2005) (citations omitted) (explaining that execution of a Delaware choice-of-law provision is not a jurisdiction-conferring act).

[74] *Holsopple*, 241 A.3d at 802 ("[T]he majority rule holds that when parties agree to litigate in a particular forum, they consent implicitly to the existence of personal jurisdiction in that forum." (internal quotation marks and citation omitted)); *accord In re Pilgrim's Pride Corp. Derivative Litig.*, 2019 WL 1224556, at *11 (Del. Ch. Mar. 15, 2019) (collecting authority); *see Genuine Parts*, 137 A.3d at 148 (Forum selection clauses "involve consent to specific jurisdiction as to the claims outlined in the agreement." (citation omitted)); *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1146 (Del. 2010) ("Forum selection clauses are presumptively valid . . . unless the resisting party clearly shows . . . the clause is invalid for reasons such as fraud and overreaching." (cleaned up)); *see also Sternberg v. O'Neil*, 550 A.2d 1105, 1109 (Del. 1988) ("A variety of legal arrangements have been taken to represent express or implied consent to . . . personal jurisdiction. . . ." (cleaned up)), *abrogated on other grounds by Genuine Parts*, 137 A.3d 123.

[75] *See Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1228 (Del. 2018) ("Where a party commits to the jurisdiction of a particular court or forum by contract, such as through a forum selection clause, a 'minimum contacts' analysis is not required as it should clearly anticipate being required to litigate in that forum." (citations omitted)).

Clean Earth has failed to plead adequate facts supporting the existence of a written contract that contains a Delaware forum selection clause. At best, its complaint and the record amassed for EBAD's motion support a reasonable inference that the parties had an informal trade relationship founded on invoiceable disposal tasks in Kentucky. A course of dealing in Kentucky, however, simply doesn't express a clear mutual intent to litigate commercial disputes exclusively in Delaware.

More important, in its brief, Clean Earth posited the existence of an "aged document" memorializing its waste disposal arrangement with EBAD.[76] To refute Clean Earth's hypothesis, EBAD lodged an affidavit in which its Director of Operations declared that EBAD does not have the elusive contract on file.[77] The same affidavit stated that those most likely to know of a written contract—or if one ever existed—couldn't recall there ever being one.[78] At argument, EBAD again

---

[76] Clean Earth Br. at 3-4; *see also* Arg. Tr. at 15-16 (Clean Earth) (speculating that the contract, if any, had been "lost over time" and also that "it stands to reason" that a written contract memorializing a "relatively sizeable commercial agreement involving [] government-regulated materials" should exist somewhere).

[77] *Compare* Clean Earth Br. at 3 ("[T]he terms of [the contract] may be in [EBAD's] repositories or within the ken of the person most knowledgeable of the relationship.") *with* Franklin Aff. ¶¶ 4-5 ("I am the person most knowledgeable concerning the relationship between EBAD and Clean Earth. . . . I have conducted a search of potentially all relevant files . . . [but] am unaware of any written master agreement between EBAD and Clean Earth.").

[78] Franklin Aff. ¶¶ 4-5 (declaring that the affiant, as Director of Operations, handles all matters related to Clean Earth and EBAD's waste disposal relationship, but that the affiant is "unaware of any written . . . agreement").

affirmed the truth of those statements to the Court.[79] And Clean Earth has mustered no good faith reason—nor any reason—for the Court to doubt EBAD's averments.[80] Now brought into sharper focus, Clean Earth's request to explore a "course of conduct" that is "difficult to discern" and only "may confer jurisdiction"[81] resembles a fishing expedition. This the Court can't allow. Jurisdictional discovery must be denied.

Clean Earth does cite a string of cases in which courts wrote that jurisdictional discovery should be "freely granted."[82] That's true. But those courts also acknowledged that jurisdictional discovery should be granted freely only where the plaintiff's jurisdictional theory is not frivolous.[83] And this third-party plaintiff's jurisdictional theory just doesn't clear factual frivolity.

---

[79] *See* Arg. Tr. at 16.

[80] *See Hartsel*, 2011 WL 2421003, at *7 (observing that courts are not required to accept factual allegations that are "contradicted by affidavit" on Rule 12(b)(2) review (citations omitted)); *see also* Arg. Tr. at 14-15 (Clean Earth) (confusing the Smith and Franklin affidavits and arguing that the Franklin affidavit "does not appear to contain a representation that there is no contract" and blithely suggesting there "likely is a contract" and that EBAD "hasn't looked for it").

[81] Clean Earth Br. at 3-4; Clean Earth Compl. ¶ 3; *but see Picard v. Wood*, 2012 WL 2865993, at *2 (Del. Ch. July 12, 2012) ("The [p]laintiff cannot establish a right to jurisdictional discovery simply by alleging that the [d]efendant 'might'" be subject to personal jurisdiction.).

[82] Clean Earth Br. at 2 (collecting cases).

[83] *See Munoz v. Vazquez-Cifuentes*, 2019 WL 669935, at *3 (Del. Super. Ct. Feb. 18, 2019) ("[P]laintiffs are entitled to discovery if their assertions are minimally plausible . . . [and] not frivolous." (internal quotation marks and citations omitted)); *Mabey*, 2018 WL 775402, at *3 ("The plaintiff bears the burden to articulate a non-frivolous basis for this court's assertion of jurisdiction." (cleaned up)); *Belden Techs., Inc. v. LS Corp.*, 626 F. Supp. 2d 448, 457 (D. Del. 2009) ("[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's

# IV. CONCLUSION

Clean Earth's jurisdiction-by-contract theory is factually frivolous. A journey to mine for an express Delaware forum selection clause within a folkloric contract of which no existential proof has been offered seems as futile as it gets. And so, under these circumstances, jurisdictional discovery is unwarranted.

EBAD's motion is **GRANTED** and Clean Earth's third-party complaint against EBAD is **DISMISSED** due to this Court's lack of jurisdiction thereover.

**IT IS SO ORDERED.**

**Paul R. Wallace, Judge**

---

claim is clearly frivolous." (internal quotation marks and citations omitted)); *see also Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 369 (D. Del. 2008) (Jurisdictional contacts must "possibl[y] exist[]" and be asserted with "reasonable particularity" to warrant jurisdictional discovery. (internal quotation marks and citation omitted)). Clean Earth also cited a federal case involving the law of the Virgin Islands—*Metcalfe v. Renaissance Marine, Inc.* 566 F.3d 324, 334-35 (3d Cir. 2009). Though otherwise obviously distinguishable, that case too recognized that jurisdictional discovery should be denied where the theory advanced is frivolous. *See id.* at 336 ("If the plaintiff's claim is not clearly frivolous as to the basis for personal jurisdiction, the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff. . . ." (cleaned up)).